No. 23-2195

_____

IN THE UNITED STATES COURT OF

APPEALS FOR THE FOURTH CIRCUIT
_____

**HARRY A. BOLDEN,**

*Plaintiff - Appellant,*

v.

**CAEI, INC., BALTIMORE GAS AND ELECTRIC COMPANY,**

*Defendants - Appellees.*

**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,**
**Amicus Curiae.**

_____

**On appeal from the United States District**
**Court for the District of Maryland**

**No. 1:21-cv-02295**

_____

**OPENING BRIEF OF APPELLANT**
_____

Eric Nwaubani, Esq.
Law Group International Chartered
1629 K Street, NW #300
Washington DC 20006
Telephone: (202) 446 8050
Email: ennwaubani@yahoo.com
Counsel for Appellant

## UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

### DISCLOSURE STATEMENT

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.


No. __23-2195__      Caption: __Harry Bolden v. CAEI, Inc and Baltimore gas and Electric Company__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__Harry Bolden__
(name of party/amicus)

_____

 who is _____Appellant_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)


1.      Is party/amicus a publicly held corporation or other publicly held entity?      ☐YES ☑NO


2.      Does party/amicus have any parent corporations?      ☐YES ☑NO
        If yes, identify all parent corporations, including all generations of parent corporations:




3.      Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?      ☐YES ☑NO
        If yes, identify all such owners:

4.  Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation?  ☐YES ☑NO
    If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question)  ☐YES ☑NO
    If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding?  ☐YES ☑NO
    If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7.  Is this a criminal case in which there was an organizational victim?  ☐YES ☑NO
    If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: /s/ Eric Nwaubani _____    Date: _____1/2/2023_____

Counsel for: harry Bolden _____

[Print to PDF for Filing]

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES……………………………………………….. iii

**JURISDICTIONAL STATEMENT**......................................................1

**STATEMENT OF THE ISSUES**……………………………………**1**

**STATEMENT OF THE CASE**........................................................3

A. Defendants' Intentional discrimination
and/or Disparate Treatment of Plaintiff............................................... 4

B.  Defendant's Discriminatory Harassment of Plaintiff…………………  6

C. Plaintiff Complains of Discrimination and is Terminated .............................6

D. Procedural History ...........................................................................6

1. Plaintiff's Administrative Complaint with the MCCR……………… ..6

2. Plaintiff files his Original Complaint Against CAEI and Exelon
Business Services Company, LLC, ("Exelon")……………………… ..6

3. Defendant Exelon's Motion to Dismiss Plaintiff's Complaint………....6

4. Plaintiff files an Amended Complaint against CAEI and BGE………..7

5. The Trial Court Grants Summary Judgment in Favor of BGE…………8

**6.** Plaintiff Seeks Reconsideration of the Order Granting Summary
Judgment ……………………………………………………………9

**7.** Plaintiff files a Notice of Appeal................................................10

8. The Court Disregards Plaintiff's New Evidence..........................10

SUMMARY OF ARGUMENT ....................................................................11

**STANDARD OF REVIEW**.................................................................**16**

**ARGUMENT** ...................................................................................**18**

1. THE DISTRICT COURT ERRED IN GRANTING SUMMARY
JUDGMENT WHEN MATERIAL FACTS REMAIN IN DISPUTE AS TO
WHETHER PLAINTIFF EXHAUSTED HIS ADMINISTRATIVE
REMEDIIES ..........................................................................................18

   A.  Material Dispute Exists as to whether BGE's Principal Officers'
   'Attendance and Interview During the Administrative Hearing Sufficiently
   Satisfy the Notice Requirement's Objectives...............................20

   B. The District Court Ignored Plaintiff's Key Factual Allegations and
   Evidence and Relied on Irrelevant Evidence and Disputed Facts when
   Evaluating the Substantial Identity Test.....................................25

      I. Material Dispute Exists as to Whether Plaintiff Could Have
      Ascertained the Role of BGE at the Time of Filing the Administrative
      Complaint.............................................................................26

      II. Material Facts Remain in Dispute with Respect to the Shared and
      Collective Interests Between CAEI and BGE to Justify Not
      Naming BGE in the Administrative Complaint.........................29

      III. Material Facts Remain in Dispute as to Whether Plaintiff's

Failure to Name BGE as a Respondent in the Administrative Charge Resulted in any Actual Prejudice to BGE……………………………... 32

IV. Material facts Remain in Dispute as to Whether BGE's Actions and Inactions Led Plaintiff to Believe that His Relationship with BGE was Through CAEI……………………………33


2. THE DISTRICT COURT ERRED IN DENYING PLAITIFF'S MOTION FOR RECONSIDEARTION ...................................35

I. The District Court Erred in Refusing to Consider Plaintiff's Previously Unavailable Evidence in His Motion for Reconsideration……………………………………………………..36

II. Summary Judgment Decision was Based Upon a Manifest Error of Law and Fact……………………………37


CONCLUSION.................................................................................39

CERTIFICATE OF COMPLIANCE............................. …………………….. . 40

CERTIFICATE OF SERVICE …........................................................41

-iii-

TABLE OF AUTHORITIES

Alvarado v. Board of Trustees of Montgomery
Community College,848 F.2d 457, 458-59 (4th Cir. 1988) ................. 12, 15, 19, 22

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49, 255 (1986).............. 16, 17

Balas v. Huntington Ingalis Indus, Inc. 711 F. 3d 401, 407 (4th Cir.2013) ............19

Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985)...................................................17

Bostic v. Wall, 588 F. Supp. 994, 997 (W.D.N.C. 1984) .........................................24

Causey v. Balog, 162 F.3d 795, 800–01 (4th Cir. 1998 ...........................................22

Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106
S.Ct. 2548, 91 L.Ed.2d 265 (1986). ..........................................................................17

Chacko v. Patuxent Inst,. 429 F. 3d. 505, 510 (4th Cir.2005) ..................................19

Deans v. CSX Transportation, Inc., 152 F.3d 326, 330-31 (4th Cir. 1998) .............17

EEOC v. AMX Commc'ns, Ltd., Civil No. WDQ-09-2483, 2010 2010)
WL 2651570, at *4 (D. Md. June 30, .......................................................................23

EEOC v. Newtown Inn Assocs., 647 F. Supp. 957, 960 (E.D. Va. 1986)................23

Eggleston v. Chi. Journeymen Plumbers' Local Union No. 130, U.A.,
657 F.2d 890, 905–07 (7th Cir. 1981).......................................................................23

Equal Emp't Opportunity Comm'n v. 1618 Concepts, Inc.,
432 F. Supp. 3d 595, 603 (M.D.N.C. 2020)................................................. 23, 24, 29

Etefia v. East Baltimore Comm. Corp., 2 F. Supp.2d 751,
756 (D.Md. 1998. ......................................................................................................16

Gamble v. Charles County, 2020 WL. 3491823,
20 -cv-3126-PWG (D. Md. Aug. 9, 2021) ......................................................... 19,33

Haavistola v. Community Fire Co. of Rising Sun, Inc.,
6 F.3d 211, 214 (4th Cir. 1993) ............................................................... 16

Holland v. Wash. Homes, Inc., 487 F.3d 208, 213 (4th Cir. 2007) ........................... 16

Huff v. Metropolitan Life Ins. Co., supra note 9, 675 F.2d at 122 .......................... 17

Jacobs v. N.C. Admin. Off. of the Courts, 780 F.3d 562, 569 (4th Cir. 2015 ......... 19

Kaplan v. Int'l Alliance of Theatrical Stage Employees,
525 F.2d 1354, 1359 (9th Cir. 1975) ....................................................... 20

Keener v. Universal Cos., Inc., 128 F. Supp. 3d 902 (M.D.N.C. 2015) ................. 22

Lavespere v. Niagara Mach. & Tool Works, Inc., 910 F.2d 167,
173-75 (5th Cir. 1990), cert. denied, 510 U.S. 859 (1993) ..................................... 35

Lipscomb v. Technologies, Services, Information, Inc.,
Civil Action No. DKC 09-3344, at 13-15 (D. Md. Feb. 18, 2011 ......................... 13

Miles v. Dell, Inc, 429 F. 3d 480, 491 (4th Cir. 2005) ............................................ 18

Marshall v. Anne Arundel Cnty., Md., No. SAG-18-0074,
2020 WL 1939712, at *5 (D. Md. Apr. 22, 2020 ............................................. 25,26

Pac. Ins. Co. v. Am. Nat's Fire Ins. Co. ................................................................ 35

Porter v. U.S. Alumoweld Co., 125 F.3d 243, 245 (4th Cir. 1997) .......................... 16

Queen v. D.C. Transit Sys., 364 A.2d 145, 148 (D.C.1976) .................................... 18

Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133 (2000) ..................... 17

Reid v. District of Columbia, 634 A.2d 423, 424 (D.C.1993) ................................. 17

Thomas v. Bet Soundstage Restaurant, 104 F. Supp. 2d 558,
560 (D. Md. 2000)................................................................................ 13,16

Tolan v. Cotton, 572 U.S. 650, 657 (2014) ............................................19

United States v. Nicholson, 676 F.3d 376 (4th Cir. 2012). .....................18

Virgo v. Riviera Beach Assocs., Ltd., 30 F.3d 1350, 1359 (11th Cir. 1994)...........23

Zhang v. Science Technology Corp,382 F.Supp.2d 761(D.Md 2005).............. 13, 14

## Statutes

42 U.S.C. § 2000e et seq…………………………………………….... 1,8. 20, 23
28 U.S.C. § 1291…………………………………………………………… 1
.

## Other Authorities

Fed. R. Civ. P. 59(e)…………………………………………………….17
Fed. R. Civ. P. 56(a)…………………………………………………..16 , 17

## JURISDICTIONAL STATEMENT

This case arises under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. The District Court had subject-matter jurisdiction under 28 U.S.C. §§ 1331 and 1367. On September 12, 2023, the District Court ruled on a pending evidentiary motion and granted summary judgment for Defendant Baltimore and Electric Gas Company's ("BGE") Motion for Summary Judgment on all claims. JA368-390. On September 26, 2023, Plaintiff filed a motion for reconsideration of the summary judgment order. JA371 [1] On October 11, 2023, Plaintiff Harry Bolden timely appealed. JA436. This Court's jurisdiction rests on 28 U.S.C. § 1291

## STATEMENT OF THE ISSUES

Plaintiff appeals the District Court's decision granting summary judgment and dismissing his claims for: (1) harassment and discrimination on the basis of sex or sex-plus-age in violation of Title VII of the Civil Rights Act of 1964; (2) retaliation and wrongful termination in violation of Title VII. Plaintiff also appeals the District Court's denial of his Motion for Reconsideration of the summary judgment. This appeal presents the following issues:

---

[1] Under Fed. R. App. P. 4(a)(4), a notice of appeal filed after entry of judgment but before disposition of such a motion becomes effective upon entry of an order disposing of the last such motion.

1. When determining motion for summary judgment, did the District Court improperly ignore Plaintiff's evidence and weigh the evidence in violation of the summary judgment standard by finding that Plaintiff failed to exhaust his administrative remedies against Defendant BGE because he failed to name BGE as a respondent in the administrative charge?

2. Did the District Court err when, in granting Defendant BGE's Motion for Summary Judgment, it applied the 'substantial identity test' to determine whether Plaintiff could sue Defendant BGE, failed to view the evidence in the light most favorable to Plaintiff, and concluded that there are no genuine disputes of material facts as to each factor in the test?

3. Whether the District Court abused its discretion by denying the motion to reconsider the summary judgment when Plaintiff presented previously unavailable evidence demonstrating Defendant BGE's prior awareness of Plaintiff's administrative claim filed with the Maryland Commission on Civil Rights ("MCCR").

## **STATEMENT OF THE CASE**

Plaintiff, Harry A. Bolden, an African American male, began working for CAEI, Inc. ("CAEI") and BGE as a temporary worker, specifically as a Customer Service Representative II at a jointly operated facility in Columbia, Maryland in September 2014. JA73 ¶ 9. Plaintiff entered into a "Temporary Worker Agreement" with CAEI as of September 12, 2014. JA133-138.   Both CAEI and BGE managers jointly exercised day-to-day supervision over the Plaintiff's work.  They shared control over his employment conditions, including the authority to hire, fire, discipline, assign tasks, and promote him, until his termination on February 11, 2016. JA73, JA133,138, JA150-154. Additionally, the Plaintiff was assigned a BGE work email address. See JA363.

Defendant BGE is a Maryland corporation headquartered in Baltimore, MD, which does extensive business in the State of Maryland. Defendant CAEI is a Maryland corporation headquartered in Columbia, Maryland. JA73.

This case arises out of (1) discrimination and disparate treatment Plaintiff was subjected to during his engagement, (2) harassment, and (3) retaliation and wrongful termination. JA72-78.

3

### A. Defendants' Intentional Discrimination and/or Disparate Treatment of Plaintiff

Around May 2015, Plaintiff's direct supervisor, Angelique Watts ("Ms. Watts"), an employee of both BGE and CAEI, subjected him to severe and pervasive harassment. [2] Specifically, Ms. Watts forced Plaintiff to perform menial and degrading tasks that were not demanded of other employees; these tasks included preparing and serving meals for the office staff. JA74 ¶ 12.  Ms. Watts repeatedly criticized Plaintiff's work performance, even when similar errors from other employees were not mentioned. She also denied Plaintiff's request for a flexible work schedule, which had been granted to other similarly situated employees as Plaintiff. Ms. Watts refused to allow Plaintiff job-related accommodations that were provided to other similarly situated employees. JA74 ¶13. Additionally, Ms. Watts relocated Plaintiff's desk to different areas of the office on several occasions, while other employees' desks remained in their original locations."JA74-75.

---

[2] Ms. Watts "was working for CAEI and BGE" and a supervisor for PAC Team. JA29.  MCCR report also shows that Ms. Watts "worked for the Respondent and BGE since February 2012." JA47.

4

## B. __Defendant's Discriminatory Harassment of Plaintiff__

On many other occasions, Ms. Watts told Plaintiff that he needed to "thug it up" when speaking with customers on the phone, and also implied repeatedly that he was not behaving stereotypically "black" enough. JA74.

At one point, during a review of Plaintiff's call recordings, Ray Hubbard ("Mr. Hubbard"), a CAEI Vice President, told Plaintiff that he didn't sound "black enough" on the phone with customers-and that he should try to change that to be more affective at his job. JA74.

Around January 15, 2016, Plaintiff complained to the Human Resources department of CAEI about the harassment and discrimination he felt he was subjected to. Plaintiff made several additional complaints, some of which were verbally made to Ms. Smoot (an HR Manager). JA74.

Following Plaintiff's initial Complaint to the Human Resources department, Ms. Watts and Mr. Hubbard began escalating Plaintiff's harassment, and sought ways to punish and provoke him, specifically they insisted that Plaintiff move his desk, knowing that such an action would degrade him and was discriminatory. JA74-75.

### C. **Plaintiff Complains of Discrimination and is Terminated**

On February 11, 2016, during a meeting with Mr. Hubbard, Plaintiff complained about the discriminatory and harassing treatment he had received from Ms. Watts. On the same day, Plaintiff was terminated from his position. JA75.

### D. **Procedural History**

**1. Plaintiff's Administrative Complaint with the MCCR. O**n October 17, 2016, Plaintiff timely filed a Charge of Discrimination with the MCCR. JA73. On or about June 10, 2021, a Notice of Right to Sue was issued by the EEOC. JA73, JA181.

**2. Plaintiff files his Original Complaint Against CAEI and Exelon Business Services Company, LLC, ("Exelon")**. On September 7, 2021. Plaintiff filed his original complaint against CAEI and Exelon, alleging employment-related race-based discrimination and harassment and retaliation termination.

**3. Defendant Exelon's Motion to Dismiss Plaintiff's Complaint**. On February 25, 2022, Exelon filed a motion to dismiss the Complaint for Plaintiff's failure to exhaust administrative remedies as to Exelon. JA7. Exelon's Motion to Dismiss was denied on May 9, 2022. JA68. During the District Court's hearing of Exelon's Motion to Dismiss Plaintiff's Complaint, Plaintiff produced the MCCR

6

Written Findings. JA43.[3] In denying Exelon's Motion, the District Court relied on MCCR's report and found the report included a "reference to an interview with Ms. Kadijah Webster, a manager with Exelon bearing supervisor authority over Plaintiff (and referred to in Exhibit C to the Motion as 'manager from BGE-Exelon." JA69.[4]

There is also a reference to Ms. Watts who "was working elsewhere for CAEI and BGE" and a supervisor for PAC Team. JA30. MCCR's report also shows that Ms. Watts "worked for the respondent and BGE since February 2012." JA47.

The District Court denied Exelon's Motion to Dismiss the Complaint, and held that "Exelon was aware of, and in fact was interviewed during, the administrative process; and, therefore that Exelon was not prejudiced by plaintiff's failure to identify Exelon as a party to his administrative charge." JA70.

**4. Plaintiff files an Amended Complaint against CAEI and BGE**. On November 23, 2022, Plaintiff filed an Amended Complaint against CAEI and BGE, setting forth three counts: (1) discrimination/disparate treatment based on race and sex: (2) harassment based on race and sex; and (3) retaliation and wrongful

---

[3] Referenced as Exhibit F. See JA43. This is also the same Exhibit referenced at JA166, included due to its independent relevance to the district court's decision on the Motion for Summary Judgment on appeal.
[4] Exhibit C referenced in the District Court's Memo includes a reference that Plaintiff was hired as a Billing Clerk IV working on a contract with BGE-Exelon Corporation in the Proactive Collection Team (PAC). See JA29.

termination. JA72. Plaintiff's Amended Complaint substituted BGE in place of Exelon as a defendant and corrected Plaintiff's address.

The intake form Plaintiff completed in connection with his administrative complaint with MCCR identifies BGE as a party against which the Plaintiff seeks redress. JA184. The Amended Complaint asserts that "Plaintiff began working for CAEI and BGE as a Customer Service Representative II at a jointly operated facility in Columbia, Maryland. Plaintiff was supervised on a day-to-day basis by both CAEI and BGE managers, who both exercised control over Plaintiff's conditions of work, and had the power to hire, fire, discipline, assign, and/or promote Plaintiff." See JA73.

**5. The Trial Court Grants Summary Judgment in Favor of BGE.** On January 30, 2023, BGE filed its Motion for Summary Judgment, seeking judgment in its favor because (1) Plaintiff did not satisfy his administrative prerequisites given that he failed to name BGE and the substantial identity exception to the naming requirement does not apply; (2) BGE did not jointly employ Plaintiff; and (3) Plaintiff did not experience discrimination, harassment, or retaliation under Title VII of the Civil Rights Act of 1964 ("Title VII"). JA79-80. After Plaintiff filed a response, including several attachments to support his opposition to BGE's Summary Judgment Motion, BGE filed a Reply Brief asking the District Court to

8

grant its Motion for Summary Judgment and dismiss Plaintiff's Amended Complaint with prejudice. JA 271-292.

The District Court issued a 22-page opinion and an Order on September 12, 2023, granting summary judgment to BGE.  The Court concluded that Plaintiff failed to exhaust his administrative remedies against BGE by not naming BGE in the EEOC charge. The Court also concluded that Plaintiff did not meet the "substantial identity test," and that there are no genuine dispute of material facts as to each factor in the test. JA368-388.

**6. Plaintiff Seeks Reconsideration of the Order Granting Summary Judgment.**  On September 26, 2023, Plaintiff filed a motion to alter or amend the trial Court's order granting summary judgment in favor of BGE under Rule 59(e) of the Federal Rules of Civil Procedure. JA391-396.  Plaintiff urged the Court to grant the motion for reconsideration based on new evidence that was not available at the time of summary judgment.   Plaintiff's previously unavailable evidence showed that BGE was aware of Plaintiff's administrative claim at the MCCR. JA397-399.  Plaintiff's evidence was a letter from CAEI's principal officer (Mr. Hubbard) to MCCR, with signatures of attendees at the MCCR proceedings and a sign in log of BGE's Brain Andrews, Sr., as billing clerk manager for Plaintiff). The evidence  shows that Mr. Hubbard (and Mrs. Webster-Duncan) were aware of the charges prior to 2021 (response letters and a statement from Mr. Hubbard,

dated 2-17- 2017, suggesting that he had prior knowledge of the charges). The evidence also shows that Mr. Hubbard signed the attendance sheet at the fact-finding hearing, along with CAEI President and CEO, Mr. Steve Burnett. Furthermore, since Mr. Hubbard and CAEI were notified before attending the fact-finding hearing, as BGE's major vendor, it would have been their obligation to inform BGE (even though BGE officials were already aware) about the charge, considering the potential risk involved for BGE.

7. **Plaintiff files a Notice of Appeal.** On October 11, 2023, Plaintiff appealed the District Court's grant of Summary Judgment in favor of BGE. JA436.

8. **The Court Disregards Plaintiff's New Evidence.** Faced with new and compelling evidence, the Court simply refused to reconsider its summary judgment decision. JA437-438.   In refusing to consider the new evidence, the District Court ignored the very purpose of reconsideration under Rule 54 and concluded that "Plaintiff's Motion seeks to relitigate previously litigated issues, which the court declines to do based on previously available evidence**."** JA437. However, in moving for reconsideration, Plaintiff did not re-argue prior rejected facts and law as the District Court concluded.

10

## SUMMARY OF ARGUMENT

**Summary Judgment**.  Plaintiff seeks reversal of the District Court's decision granting summary judgment in BGE's favor. Throughout its decision, the District Court violated the well-known standards governing summary judgment decisions. The Court weighed the evidence and ignored Plaintiff's evidence that contradicted key factual conclusions on which the Court relied. In a prior ruling in this  matter upon Exelon's Motion to Dismiss Plaintiff's Complaint, the  District Court ruled in this case that: "Following investigation of Plaintiff's administrative charge, the Maryland Commission on Civil Rights issued Written Findings (Exhibit F to the Motion, ECF 11) which include reference to an interview with Ms. Kadijah Webster, a manager with Exelon bearing supervisory authority over Plaintiff (and referred to in Exhibit C to the Motion as "Manager from BGE-Exelon"). JA70 . The District Court ultimately disagreed with its prior denial of the motion to dismiss and instead granted the summary judgment even in the face of the same evidence. Two fundamental errors undermine the Court's decision: (1) its misinterpretation of Plaintiff's evidence demonstrating thorough exhaustion of administrative remedies, and (2) its misapplication of the substantial identity exception, failing to recognize how Plaintiff's case meets the required criteria based on the unique facts presented. When the summary judgment standard is properly

applied to the record, it is clear that genuine issues of material facts remain for trial in this case.

The Court granted BGE's Motion for Summary Judgment, holding that Plaintiff failed to exhaust his administrative remedies against BGE by not naming BGE in the EEOC charge. JA374-376. The Court applied the substantial identity exception to determine whether Plaintiff may "bring suit against" BGE. The Court did not consider and apply the appropriate weight to all facts in the record in analyzing the substantial identity test. There are material facts in dispute, which preclude the Court from granting summary judgment in BGE's favor, and the September 12 Order must be vacated to prevent manifest injustice to Plaintiff.

Under Title VII, a civil action may be brought after administrative proceedings have ended or conciliation attempts have failed only against the respondent named in the administrative charge. The purpose of the naming requirement is (1) to notify the charged party of the asserted violation, (2) to bring the charged party before the EEOC and to permit the EEOC to attempt a reconciliation between the parties. Alvarado v. Board of Trustees of Montgomery Community College, 848 F.2d 457, 458-59 (4th Cir. 1988). When properly evaluated under the standards articulated in Alvarado, the interview of BGE principal officers, including Ms. Khadijah Webster and Ms. Watts, who worked for CAEI and BGE since February 2012, there is no functional difference between the

12

notice and the participation afforded BGE through its own leadership in the

administrative proceedings and what would have been afforded had BGE been

listed directly as a respondent instead. See JA166.

As the District Court recognized, the Fourth Circuit has not formally

adopted an exception to the naming requirement. JA376. However, several district

courts within the Circuit have employed substantial identity test to assess whether

a civil action may be brought against a party not named in the underlying

administrative complaint. First, to determine whether a substantial identity exists

between two entities, the court will consider: "(1) similarity of interests between

named and unnamed parties; (2) ability of the plaintiff to ascertain the unnamed

party at the time of the EEOC charge; (3) notice of the EEOC charge by the

unnamed party; and (4) prejudice." Zhang v. Science Technology Corp., 382 F.

Supp. 2d 761 (D. Md. 2005).  See Thomas v. Bet Sound-Stage Rest./Brett Co,

Inc.,61 F.Supp.2d 448, 457-58 (D.Md. 1999)). Lipscomb v. Technologies, Services,

Information, Inc., Civil Action No. DKC 09-3344, at 13-15 (D. Md. Feb. 18,

2011). When properly evaluated under the standards articulated in Zhang, the facts

and evidence demonstrating the intertwined roles of CAEI and BGE throughout

Plaintiff's engagement, coupled with his statement during the administrative

charge filing that he acted "professionally during [his] time at CAEI and BGE,"

show Plaintiff's intent to include BGE in the administrative claim**.** JA184.

13

Second, when reviewing a motion for summary judgment, a court must view the record in the light most favorable to the non-moving party. The Amended Complaint alleges that in "September 2014, Plaintiff began working for CAEI and BGE as a Customer Service Representative II at a jointly operated facility in Columbia, Maryland. Plaintiff was supervised on a day-to-day basis by both CAEI and BGE managers, who both exercised control over Plaintiff's conditions of work, and had the power to hire, fire, discipline, assign, and/or promote Plaintiff." JA73. Thus, the District Court ought to have viewed the record in the light most favorable to Plaintiff. In applying the "substantial identity" test, the District Court did not fully consider the facts and evidence regarding the relationship between BGE and CAEI in relation to Plaintiff's engagement. This evidence would be relevant to whether BGE exercised sufficient control over Plaintiff's work, even though employed by CAEI. Plaintiff alleged facts sufficient to show the relationship between CAEI and BGE, making him entitled to one of the above exceptions, but it appears the District Court wanted a greater quantum of evidence from the Plaintiff regarding his entitlement to one of the Zhang exceptions than that authorized by prior precedents, which the Court referenced in its ruling.

This Court has previously held that "identical" entity exists as to defendants, such that plaintiff can maintain his suit against that defendant "despite Plaintiff's failure to name the defendant specifically in his administrative

14

complaint." <u>Alvarado</u>, 848 F.2d 457, 461. Plaintiff alleged facts sufficient to show that he is entitled to one of the substantial identity exceptions. The Amended Complaint alleges that in "September 2014, Plaintiff began working for CAEI and BGE as a Customer Service Representative II at a jointly operated facility in Columbia, Maryland. Plaintiff was supervised on a day-to-day basis by both CAEI and BGE managers, who both exercised control over Plaintiff's conditions of work, and had the power to hire, fire, discipline, assign, and/or promote Plaintiff.". JA73, JA311-314, JA318-361.

Third, the record demonstrates that the District Court's specific factual finding regarding BGE's awareness and participation in the administrative proceeding rests upon a clearly erroneous factual finding. In a prior ruling in this matter upon Exelon's Motion to Dismiss Plaintiff's Compliant, the Court ruled in this case that: "Following investigation of Plaintiff's administrative charge, the Maryland Commission on Civil Rights issued Written Findings (Exhibit F to the Motion, ECF 11) which include reference to an interview with Ms. Kadijah Webster, a manager with Exelon bearing supervisory authority over Plaintiff and referred to in Exhibit C to the Motion as "Manager from BGE-Exelon").JA70.

Plaintiff made a sufficient showing to avoid the general rule that a party may not be sued in federal court without being named in the prior administrative

15

proceeding. Therefore, exhaustion of administrative remedies was satisfied before the suit against BGE, rendering the district court's summary judgment incorrect.

**Motion for Reconsideration**.  The District Court erred in denying Plaintiff's Motion for Reconsideration on ground that Plaintiff's motion sought to relitigate previously litigated issues. JA437-438.

## STANDARD OF REVIEW

**Standard of Review for Grant of Summary Judgment**. This Court reviews the grant of summary judgment de novo, applying the same familiar standards as the district court. Holland v. Wash. Homes, Inc., 487 F.3d 208, 213 (4th Cir. 2007). Summary judgment is appropriate only when "there is no genuine dispute as to any material fact," meaning no reasonable factfinder could find for the non-moving party, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49, 255 (1986); Thomas 104 F. Supp. 2d 558, 560 (D. Md. 2000); Anderson 477 U.S. 242, 250; Haavistola v. Community Fire Co. of Rising Sun, Inc., 6 F.3d 211, 214 (4th Cir. 1993); Etefia v. East Baltimore Comm. Corp., 2 F. Supp.2d 751, 756 (D.Md. 1998). The facts and all reasonable inferences to be drawn therefrom must be viewed in the light most favorable to the non-movant. Porter v. U.S.

16

Alumoweld Co., 125 F.3d 243, 245 (4th Cir. 1997). The evidence of the non-movant is to be believed and all justifiable inferences drawn in his or her favor. See Deans v. CSX Transportation, Inc., 152 F.3d 326, 330-31 (4th Cir. 1998); Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985). The party opposing summary judgment must present evidence of specific facts from which the finder of fact could reasonably find for him or her. See Anderson, 477 U.S. at 252, 106 S.Ct. 2505; Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In reviewing a motion for summary judgment, a court may not weigh evidence or make credibility determinations. Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133 (2000). Similarly, a court cannot resolve fact disputes at the summary judgment stage. Id.

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A "material fact" is one which "might affect the outcome of the suit under the governing law**."** Anderson, 477 U.S. 242 (1986).

**Standard of Review under Rule 59(e).** With regard to the District Court's refusal to consider the evidence presented by Plaintiff in his Motion for Reconsideration, the Court of Appeals must review whether the Court exercised "sound discretion" in doing so. Reid v. District of Columbia, 634 A.2d 423, 424 (D.C.1993) (citing Rule 60(b); Huff v. Metropolitan Life Ins. Co., supra note 9,

17

675 F.2d at 122; See <u>Queen</u> v. <u>D.C. Transit Sys</u>., 364 A.2d 145, 148 (D.C.1976)

(citing Rule 59(e)).   The district court "abuses its discretion when it denies a

motion for reconsideration without considering all relevant factors or relying on

erroneous factual or legal premises. <u>United States</u> v. <u>Nicholson</u>, 676 F.3d 376 (4th

Cir. 2012).


**ARGUMENT**

**1. THE DISTRICT COURT ERRED IN GRANTING SUMMARY JUDGMENT WHEN MATERIAL FACTS REMAIN IN DISPUTE AS TO WHETHER PLAINTIFF EXHAUSTED HIS ADMINISTRATIVE REMEDIIES**


As noted above, under Title VII, a civil action may be brought after

administrative proceedings have ended or conciliation attempts have failed only

against the respondent named in the administrative charge. The purpose of the

naming requirement is (1) to notify the charged party of the asserted violation, (2)

to bring the charged party before the EEOC and to permit the EEOC to attempt a

reconciliation between the parties. <u>Alvarado</u>, 848 F.2d 457, 458-59 ; <u>Miles</u> v. <u>Dell,</u>

<u>Inc</u>, 429 F. 3d 480, 491 (4th Cir. 2005) (noting that administrative exhaustion is to

"ensure[] that the employer is put on notice of the alleged violations so that the

matter can be resolved out of the court if possible"). According to the District

Court, the" exhaustion requirement, therefore, is not simply a formality to be rushed through so that an individual can quickly file his subsequent lawsuit." Chacko v. Patuxent Inst,. 429 F. 3d. 505, 510 (4th Cir.2005). It "serves a vital function in the process of remedying an unlawful employment practice." Balas v. Huntington Ingalis Indus, Inc. 711 F. 3d 401, 407 (4th Cir.2013). JA355. However, as this Court has stated severally, since "EEOC complaints are often filed without the assistance of counsel, the Fourth Circuit's requirement is not rigid: where a complaint lists a party's name sufficiently close to the proper respondent, the name requirement gives way to the "substantial identity exception." Id. at 461." Gamble v. Charles Cnty., 20-cv-3126-PWG, 18 (D. Md. Aug. 9, 2021).

Under the summary judgment standard, once the party opposing summary judgment presents evidence of specific facts from which the finder of fact could reasonably find for him or her, the burden shifts to the moving party to produce evidence that contradicts the opposing party. See Reeves, 530 U.S. 133 (2000).

District courts may not grant summary judgment where doing so requires the court to ignore plaintiff's evidence and find facts that are the subject of conflicting evidence. Tolan v. Cotton, 572 U.S. 650, 657 (2014); Jacobs v. N.C. Admin. Off. of the Courts, 780 F.3d 562, 569 (4th Cir. 2015). Yet, that is precisely what the District Court did in this case. As in Jacobs, the District Court's factual recitation states the facts in the light most favorable to the movant, rather than the non-

19

movant. Each of the District Court's key factual conclusions supporting its decision is the subject of conflicting evidence, as discussed below. The District Court's decision should be reversed and remanded for trial.

A. **Material Dispute Exists as to whether BGE's Principal Officers' Attendance and Interview During the Administrative Hearing Sufficiently Satisfy the Notice Requirement's Objectives**

Plaintiff has adduced evidence sufficient to warrant trial regarding whether the interview of BGE's principal officer during the administrative proceedings amount to BGE's participation in the administrative hearing, and thusly, whether such an appearance and interview can satisfy the notice requirement objective. Nevertheless, BGE argues that Plaintiff did not exhaust his administrative remedies because he did not name BGE in the administrative charge. JA79-80.

Title VII does not require procedural exactness from lay complainants and intake officers: "EEOC charges must be construed with utmost liberality since they are made by those unschooled in the technicalities of formal pleading." Kaplan v. Int'l Alliance of Theatrical Stage Employees, 525 F.2d 1354, 1359 (9th Cir. 1975). As noted above, the naming requirement is designed to provide notice to the charged party and to permit the EEOC to attempt voluntary conciliation of complaints. As the District Court itself noted in a prior ruling in this case, "Title

20

VII administrative procedures are 'not intended to serve as a stumbling block to the accomplishment of the statutory objective,' and that demanding procedural perfection where the plaintiff filed his administrative charge without the benefit of counsel places a burden 'Congress neither anticipated nor intended." JA69.

When he was asked by a staff member at the MCCR for the remedy he was seeking, Plaintiff responded " I had only acted professionally in my time at  CAEI and BGE; winning several wards for service and dedication…" JA184-185. Plaintiff filled out the form based on his responses to the questions in the intake form. The form makes provisions for the charge name, number, intake officer and description of the remedy sought. There is no separate provision for Plaintiff to list all the parties he intended to notify about the charge. It is not reasonable to expect Plaintiff to have known that BGE should have been listed separately as a party. Plaintiff named BGE as a party he seeks remedy against for his administrative complaint. Plaintiff believed that reference to BGE as one party against whom he seeks remedy would be sufficient to alert MCCR's intake officer about BGE's role in the complaint. Plaintiff was never asked if he intended to file a complaint or file a suit against BGE. Plaintiff's reference to BGE in his intake form sufficiently identifies it as a party close to CAEI and thus a proper respondent. Following the reference to BGE, its principal officer, Ms. Kadijah Webster, was interviewed during the administrative proceedings. JA169. In a prior  ruling in this  matter upon

21

Exelon's Motion to Dismiss Plaintiff's Compliant, relying on MCCR Written

Finding,  the  District Court ruled in this case that: "Following investigation of

Plaintiff's administrative charge, the Maryland Commission on Civil Rights

("MCCR") issued Written Findings (Exhibit F to the Motion, ECF 11) which

include reference to an interview with Ms. Kadijah Webster, a manager with

Exelon bearing supervisory authority over Plaintiff (and referred to in Exhibit C to

the Motion as "Manager from BGE-Exelon"). JA70.

As noted above, the purpose of the naming requirement is twofold: (1) to

notify the charged party of an alleged violation, and (2) to secure the charged

party's compliance with the law. See Alvarado, 848 F.2d at 458–59. If these two

purposes are satisfied, the naming requirement has also been satisfied. See Causey

v. Balog, 162 F.3d 795, 800–01 (4th Cir. 1998). Furthermore, "[c]ourts are

sympathetic to the difficulties of mastering the organizational structure of an

employer and naming all corporate entities that may have been involved in the

discriminatory conduct" at issue.  Keener v. Universal Cos., Inc., 128 F. Supp. 3d

902 (M.D.N.C. 2015) (citing Alvarado, 848 F.2d at 460).

Here, the two goals are in no way compromised by a finding that Plaintiff

satisfied the naming requirement by naming BGE as a party against whom he

sought remedy in the administrative complaint and not listing it as a respondent,

22

and there is no functional difference between the notice and the participation

afforded BGE through its own leadership during the administrative proceedings

and what would have been afforded had BGE been named directly as a party

instead. The District Court's finding that Plaintiff did not name BGE in his

administrative charge of discrimination with the MCCR and EEOC

is demonstrably contradicted by the facts and evidence.

Further, there is a Fourth Circuit law holding that a party not named in an

EEOC charge may nevertheless be subject to a Title VII suit if it receives actual

notice of the EEOC proceeding against it. See, e.g., Virgo v. Riviera Beach

Assocs., Ltd., 30 F.3d 1350, 1359 (11th Cir. 1994) (noting that "courts liberally

construe this requirement" and applying a multi-factor analysis); Eggleston v. Chi.

Journeymen Plumbers' Local Union No. 130, U.A., 657 F.2d 890, 905–07 (7th Cir.

1981) (reversing dismissal on grounds that unnamed party had adequate notice and

opportunity to participate in conciliation. See Equal Emp't Opportunity Comm'n v.

1618 Concepts, Inc., 432 F. Supp. 3d 595, 603 (M.D.N.C. 2020). EEOC v. AMX

Commc'ns, Ltd., Civil No. WDQ-09-2483, 2010 WL 2651570, at *4 (D. Md. June

30, 2010) (finding that the naming requirement had been met when defendants

received both notice of EEOC charges and the EEOC's attempt at

conciliation); EEOC v. Newtown Inn Assocs., 647 F. Supp. 957, 960 (E.D. Va.

1986) (finding that when defendants "had actual notice and participated in the

conciliation process," the naming requirement had been satisfied); <u>Bostic v.</u>

<u>Wall</u>, 588 F. Supp. 994, 997 (W.D.N.C. 1984) (noting that "the courts are reluctant

to dismiss the unnamed party if he had notice of the EEOC conciliatory efforts and

participated in EEOC proceedings"), <u>aff'd</u>, 762 F.2d 997 (4th Cir. 1985, Equal

Emp't Opportunity Comm'n 432 F. Supp. 3d 595, 604 (M.D.N.C. 2020)

    Despite its own initial factual finding and compelling evidence to the

contrary, the District Court inexplicably disregarded its conclusions and credited

the demonstrably false testimony of Ms. Kadijah Webster, asserting that she was

never interviewed by MCCR during the administrative hearing. See JA163-165,  In

response to Plaintiff administrative complaint that Ms. Watts and Ms. Khadijah

Webster falsely accused him of violating the employee conduct policy relative to

logging in and out of his computer, the MCCR's Written Findings show that

according to Ms. Webster, Plaintiff left "his computer log on." JA169.  Thus, Ms.

Webster was interviewed by the MCCR during the hearing regarding Plaintiff's

administrative complaint. MCCR's report further states that according to the

"Respondent, it is important that the team meets the goals of its clients specifically

BGE, and that both Ms. Russ and Ms. Roden, have successfully worked with many

customers who lodged complaints and were able to convert those complaints to

compliments that did in fact, make their way up to BGE senior management staff."

JA149. According to the investigation, Ms. Watts worked for CAEI and BGE

24

"since February 2012...." JA150.  Nevertheless, the District Court concluded that "it is undisputed that Plaintiff did not name BGE in his administrative charge of discrimination with the MCCR and the EEOC. JA376. The District Court either omitted entirely or downplayed the significance of this evidence and its own records.   The District Court's decision should be reversed, and this matter should be remanded for trial.

**B. The District Court Ignored Plaintiff's Key Factual Allegations and Evidence and Relied on Irrelevant Evidence and Disputed Facts when Evaluating the Substantial Identity Test**

According to the District Court, "unless the substantial identity exception applies, plaintiff may not bring suit against BGE." JA376. The District Court's conclusion is deeply disturbing because it is the product of a refusal to acknowledge the evidence that BGE's principal officers were interviewed during the administrative hearing. Thus, the "substantial identity test" analysis is unnecessary because BGE's principal officer's attendance and interview already fulfilled the notice requirement's objectives.

As the District Court notes "the Fourth Circuit has not formally adopted the 'substantial identity test,' and other Courts within the Circuit have employed the test to assess whether a civil action can fairly be brought against a defendant other the one named in the named in the EEOC charge." Marshall, 2020 WL 1939712, at *5. JA376.  In analyzing the "substantial identity test" the District Court

25

committed a clear legal error because it failed to apply the appropriate weight to all facts and evidence on the record.  As material facts remain in dispute for each of the four factors, the District Court's conclusion that Plaintiff cannot bring suit against BGE was in gross error and should be reversed.

I.   **Material Dispute Exists as to Whether Plaintiff  Could Have Ascertained the Role of BGE at the Time of Filing the Administrative Complaint**

The District Court found that first factor " whether the role of the unnamed party could have been ascertained at the time of the of the EEOC complaint weighs in favor of BGE"JA377.  The District Court relied on Marshall v. Anne Arundel Cnty., Md., No. SAG-18-0074, 2020 WL 1939712, at *5 (D. Md. Apr. 22, 2020, where the plaintiff failed to join the County that paid her salary and provided her benefits, and, by the time she filed her administrative claim she had contacted the County regarding her allegations of discrimination. This is clearly not the case here. Rather, as Plaintiff's Complaint and evidence demonstrate, BGE and CAEI roles collided in their interactions with the Plaintiff.

Assuming the truth of Plaintiff's allegations and the evidence, at the time of filing the administrative charge, Plaintiff believed that BGE's interests were identical to those of CAEI. At Plaintiff's deposition, it appears he was confused about whether BGE and CAEI were separate entities, but he initially testified that he did not know that BGE and CAEI were separate entities. JA230: 1-4. Plaintiff

26

further testified at the deposition that he physically went into CAEI to apply and interview for his position.  JA218: 2-9, 219: 1-6. Plaintiff also explained that after his initial interview with CAEI, he had a second round of interview with BGE.JA221:13-19, JA370.

Even though, Plaintiff testified that CAEI and BGE were at separate locations, Plaintiff also testified that in the process, he was also interviewed by several people from BGE. JA304: 1-22. Plaintiff also testified that after his interview, he was advised that he would be at BGE. JA306: 12-15. Plaintiff explained that he knew from the onset that his position was going to serving BGE. JA307: 11-17. Plaintiff also explained that if he was running late for work, he would either send a text message or call his supervisors, which included some CAEI employees and also Penny Jenkins employed by BGE.JA312: 19-22. Plaintiff also testified that Ms. Khadija Webster asked him to train new representatives.[5]  JA323: 2-7.

Plaintiff also explained that he had been asked to relocate his seat to a different place. When Plaintiff did not move as directed, Ms. Khadija Webster directed that if Plaintiff did not move, "the police will come there and assist her in having [Plaintiff] move [his] seat. JA344: 10-19.

---

[5] Ms. Webster also known as Khadija Duncan is described as a Manager at BGE. JA323: 16-21, JA163, JA373 (n. 7).

As noted above, MCCR Findings clearly reports Respondent stating, "it is important that the team meets the goals of its clients specifically BGE, and that both Ms. Russ and Ms. Roden, have successfully worked with many customers who lodged complaints and were able to convert those complaints to compliments that did in fact, make their way up to BGE senior management staff." JA169.

To establish a genuine issue of material fact regarding "whether the role of the unnamed party could through reasonable efforts be ascertained at the time of filing the EEOC complaint," Plaintiff does not need to prove specific knowledge of BGE's role at the time of filing. Instead, Plaintiff needs to point to sufficient facts and evidence that, if established, would entitle him to a trial on this first factor.

Here, Plaintiff's Complaint alleges that Plaintiff worked for CAEI and BGE as a "Customer Service Representative II at a jointly operated facility in Columbia, Maryland." JA73, at ¶ 9.  The Complaint further states that Plaintiff was "supervised on a day-to-day basis by both CAEI and BGE managers, who both exercised control over Plaintiff's conditions of work, and had the power to hire, fire, discipline, assign, and/or promote Plaintiff." JA73.

Plaintiff's ability to allege sufficient facts and present diverse evidence demonstrating the intertwined roles of CAEI and BGE throughout his employment, coupled with his statement during the administrative charge filing that he acted "professionally in [his] time at CAEI and BGE," would allow a reasonable jury to

28

infer Plaintiff's intent to include BGE in the administrative claim. See JA184. This raises a material dispute regarding whether Plaintiff could have reasonably ascertained BGE's distinct role at the time of filing the administrative complaint.

## II.  Material Facts Remain in Dispute with Respect to the Shared and Collective Interests Between CAEI and BGE to Justify Not Naming BGE in the Administrative Complaint

Courts consider many factors, including the similarity of interest between the named party and the unnamed party; (1)whether the plaintiff could have ascertained the identity of the unnamed party at the time the EEOC charge was filed; (2) whether the unnamed party received adequate notice of the charges; (3) whether the unnamed party had an adequate opportunity to participate in the conciliation process; (4) and whether the unnamed party was actually prejudiced by its exclusion from the EEOC proceedings. See Equal Emp't Opportunity Comm'n , 432 F. Supp. 3d 595, 604 (M.D.N.C. 2020)

The inclusion of both CAEI and BGE on Plaintiff's intake form indicates their alleged joint involvement in the alleged harassment and discrimination. JA184. Additionally, CAEI's principal officers, including the CEO and President, Mr. Steve Burnett, signed the attendance sheet at the fact-finding hearing regarding Plaintiff's administrative charge. JA397-399. This suggests that CAEI, as a vendor for BGE, was aware of the charge before February 2017. Given the potential risk for BGE, CAEI's knowledge of the charge raises the question of whether CAEI and

its principal officers informed BGE about the charge. The evidence – including both BGE and CAEI were listed on the intake form and CAEI's attendance at the hearing regarding Plaintiff's charge – suggests a close relationship between the two entities. This raises questions that go to the heart of the substantial identity test factors. Specifically, it calls into question whether BGE and CAEI have shared and collective interests **(Factor 2)** and whether Plaintiff could have reasonably believed BGE's interests were represented by CAEI due to their apparent connection **(Factor 4)**. These points create a genuine dispute about material facts relevant to the application of the substantial identity test.

Further, the MCCR investigation shows that it interviewed and obtained responses from BGE leadership. It concluded that "the investigation could not find evidence that Ms. Watts and Ms. Khadijah Webster, Manager, falsely accused the Complainant of violating the employee conduct policy…." JA46, JA169. Notably, Ms. Watts refers to Angelique Watts, a team lead at CAEI, Ms. Khadijah Webster, (aka Khadija Duncan) was at the material time a manager at BGE. JA224: 1-7, JA239:16-21. According to MCCR investigation, Ms. Watts worked for CAEI and BGE "since February since February 2012…." JA170. The Investigation further shows that "Ms. Watts assumed responsibility for many of BGE's pilot programs." JA170.The Investigation also shows that "Ms. Watts was hand chosen by the BGE management team, with the Respondent's approval." JA170.

30

The District Court's undisputed facts show similarity of interest between BGE and CAEI. For example, Mr. Hubbard managed CAEI's customer account with BGE and was also responsible for managing BGE's Collection Strategy Pilot. JA369. "CAEI had a role in operating BGE's financial solutions department program". JA370. The facts are also disputed as to the similarity of interest between the two entities because the evidence shows shared workers and management and shared supervision, shared operations, shared email accounts, shared office and working equipment with BGE and CAEI in regard to the collection strategy pilot program.

The MCCR report and Complaint suggest a close relationship between BGE and CAEI, evidenced by shared employees. JA166. The evidence further indicates the Plaintiff had a BGE email account despite being initially engaged by CAEI. JA363

As noted above, the MCCR report even identifies BGE employees with dual responsibilities towards both entities. See JA166. These clearly established facts, including Ms. Watts being hand-chosen by the BGE management team with the Respondent's approval, further support Plaintiff's argument that BGE and CAEI are interrelated.

Considering these facts alongside the Complaint allegations, a material dispute exists regarding the extent of shared interest between CAEI and BGE that

31

could justify omitting BGE from the initial administrative complaint. Nevertheless, Plaintiff was not required to conclusively prove that a shared interest existed between BGE and CAEI at the summary judgment stage, but instead only create an issue of fact for trial as to whether both entities carried out operations in such a way that such a relationship existed. The District Court's decision was a gross error and should be reversed.

### III.  **Material Facts Remain in Dispute as to Whether Plaintiff's Failure to Name BGE as a Respondent in the Administrative Charge Resulted in any Actual Prejudice to BGE**

Plaintiff's failure to name BGE as a respondent in the administrative charge did not result in any actual prejudice to BGE. MCCR report shows that both BGE and CAEI's principal officers were specifically named in the report and were each interviewed by MCCR and participated in the conciliation such that they had effective notice from the inception of the administrative charge. See JA166. This factor favors Plaintiff. However, despite this evidence, the District Court agreed with BGE's position and that it did not participate in the MCCR process and that "it is unknown whether BGE's participation in the settlement discussions could have resulted in in a complete resolution of the matter." JA386.  However, as noted above, the evidence shows the participation of both Ms. Khadijah Webster,

Manager at BGE and Ms. Watts who worked for CAEI and BGE "since February 2012…." assumed responsibility for many of BGE's pilot programs."[6] JA170.

Further, contrary to the District Court's finding, at the time of filing the administrative complaint and subsequent court action, Plaintiff was not aware that BGE and CAEI were separate entities. JA230:1-4.  Applying the standard in Gamble v. Charles County, 2020 WL. 3491823, 20 -cv-3126-PWG (D. Md. Aug. 9, 2021), the MCCR's proceedings did not result in an adverse finding against either CAEI or BGE. Thus, it is wholly implausible that, had BGE been named as a respondent in the administrative complaint, it would have altered the course of proceedings because the commission found that Plaintiff had not made out a case that "the Respondent discriminated against the Complainant because of race, sex, and retaliation under Title 20, Subtitle6 of the State Government Article, Annotated Code of Maryland." JA178.

IV. **Material facts Remain in Dispute as to Whether BGE's Actions and Inactions Led Plaintiff to Believe that His Relationship with BGE was Through CAEI**

The District Court found that the "relationship between BGE and CAEI may have been complicated to Plaintiff." JA387.  The evidence suggests a close

---

[6] The investigation also shows that "Ms. Watts was hand chosen by the BGE management team, with the Respondent's approval. JA170.

relationship between BGE and CAEI, which may have impacted Plaintiff's understanding of their roles. For instance, Plaintiff initially believed BGE's interests were identical to CAEI's when filing the administrative charge. JA184. Further, his deposition reveals confusion regarding their separateness. JA218-221. This confusion is supported by Plaintiff's Complaint, which states that he believed he worked for a jointly operated BGE-CAEI facility with shared supervisory control JA73.

MCCR investigation and findings show that Ms. Watts worked for CAEI and BGE "since February since February 2012…." JA150. The investigation further shows that "Ms. Watts assumed responsibility for many of BGE's pilot programs." The investigation also shows that "Ms. Watts was hand chosen by the BGE management team, with the Respondent's approval." JA170

As Plaintiff's evidence shows, CAEI's principal officers Mr. Hubbard signed the attendance sheet at the fact-finding hearing, along with CAEI President and CEO Mr. Steve Burnett. Furthermore, since Mr. Hubbard and CAEI were notified before attending the fact-finding hearing, as a vendor for BGE, it would have been their obligation to inform BGE about the administrative charge, considering the potential risk involved for BGE. JA397-399.

The foregoing points raise genuine disputes about material facts relevant to Fact**or 4** of the substantial identity test. In summary judgment proceedings, the presence of such disputes precludes a grant of summary judgment.

### 2.  THE DISTRICT COURT ERRED IN DENYING PLAITIFF'S MOTION FOR RECONSIDEARTION

Under Rule 59(e), the court may grant a motion to alter or amend a judgment in three limited circumstances: (1) to accommodate an intervening change in controlling law;(2) to account for new evidence previously unavailable; and (3) to correct a clear error of law or prevent manifest injustice. See Pac. Ins. Co. v. Am. Nat's Fire Ins. Co., "[t]he rule permits a district court to correct its own errors, 'sparing the parties and the appellate courts the burden of unnecessary appellate proceedings.'" (148 F.3d 396, 403 (4th Cir. 1998. The burden of establishing at least one of these 'exacting substantive requirements' is on the movant," and a determination of whether that showing has been made is within the district court's discretion. See Lavespere v. Niagara Mach. & Tool Works, Inc., 910 F.2d 167, 173-75 (5th Cir. 1990), cert. denied, 510 U.S. 859 (1993)).

**I.**    **<u>The District Court Erred in Refusing to Consider Plaintiff's Previously Unavailable Evidence in His Motion for Reconsideration</u>**

Upon BGE's Motion for Summary Judgment, the District Court reviewed the arguments and evidence presented by the parties, and granted summary judgment in favor of BGE on the ground that Plaintiff failed to exhaust his administrative remedies against BGE, by not naming it in the administrative charge. JA376. The Court then applied the substantial identity test to determine whether Plaintiff may "bring suit against" BGE and concluded that Plaintiff may not. JA376-389.

In addressing Plaintiff's Motion for Reconsideration, the District Court erred from the start in concluding that Plaintiff's motion sought to relitigate previously litigated issues because the evidence Plaintiff relied upon for his motion was previously available evidence. JA437. Although the District Court asserted that Plaintiff's evidence was not in fact new, it concluded that even if they were "genuinely unavailable to Plaintiff at the time summary judgment papers were filed, the court is unpersuaded that they generate a dispute of material fact, even when viewed in a light most favorable to Plaintiff as the non-movant." JA437. Nevertheless, the new evidence shows that the principal officers of CAEI along with CAEI President and CEO and President, Mr. Steve Burnett, signed the attendance sheet at the fact-finding hearing. JA397-399. The implication of this

evidence is that since CAEI's principal officers were aware of Plaintiff's administrative charge even before February 2017 and as a vendor for BGE, it would have been their obligation to inform BGE (which as the evidence suggests, they were already aware) about the charge, considering the potential risk for BGE. As noted above, Plaintiff's evidence – including both BGE and CAEI were listed on the intake form as well as BGE and CAEI's principal officer's attendance at the hearing regarding Plaintiff's charge – suggests a close relationship between the two entities. This raises questions that go to the heart of the substantial identity test factors. Specifically, it calls into question whether BGE and CAEI have shared and collective interests **(Factor 2)** and whether Plaintiff could have reasonably believed BGE's interests were represented by CAEI due to their apparent connection **(Factor 4)**. These points create a genuine dispute about material facts relevant to the application of the substantial identity test.

## II.    Summary Judgment Decision was Based Upon a Manifest Error of Law and Fact

The District Court's refusal to reconsider the summary judgment decision constitutes an abuse of discretion and a reversible error. First, the court failed to consider all relevant facts in the record, particularly the evidence of a close relationship between BGE and CAEI, including the fact that Plaintiff listed both

37

BGE and CAEI on the intake form as well as CAEI's principal officers' attendance at the hearing regarding Plaintiff's charge. In its summary judgment decision, the Court itself admitted the "relationship between BGE and CAEI may have been complicated to Plaintiff." JA387. Nonetheless, it concluded that the Court "discerns no clear error of law on its part; nor does the court agree with Plaintiff that summary judgment in Defendants' favor (and denial of the Motion) operates a manifest injustice." JA437.

Second, Plaintiff introduced previously unavailable evidence concerning the relationship between BGE and CAEI. This evidence specifically highlights CAEI's principal officers' awareness of the administrative charge prior to February 2017 and CAEI's obligation, as BGE's primary vendor, to inform BGE about the charge, even though BGE officials were apparently interviewed during the administrative proceedings.

In refusing to consider that by granting summary judgment for BGE the Court indeed reached manifestly unjust results, ignoring its own finding of an intricate relationship between BGE and CAEI, which  could have significantly impacted the court's application of the substantial identity test— raising genuine disputes about material facts and precluding summary judgment— the District Court  seriously erred not merely in failing to exercise sound discretion, but in

38

failing to exercise any discretion at all.  The court's failure to exercise discretion,

preventing it from considering Plaintiff's previously unavailable evidence,

necessitates reversal.

## CONCLUSION

The District Court clearly misapplied the summary judgment standard to the

factual record in this case and committed clear error in erroneously granting

summary judgment to BGE, and then compounded these errors by refusing to

consider new and crucial evidence offered by Plaintiff. This Court should reverse

the District Court's actions, remand this matter with instructions to the District

Court to withdraw the summary judgment, and require the Court in equity and in

fairness to consider the overwhelming evidence before it, demonstrating that

Plaintiff exhausted his administrative remedies before bringing this action or, in the

alternative consider the evidence and factual allegations demonstrating genuine

disputes about material facts relevant to the application of the substantial identity

test. The District Court's decision contained multiple reversible errors and should

be vacated. The case should be remanded to the District Court for trial.

Dated: February 19, 2025

Respectfully submitted,

/s/ Eric Nwaubani
Eric  Nwaubani, Esq,
Law Group International Chartered
1629 K Street, NW #300
Washington DC 20006
Telephone: (202) 446 8050
Email: ennwaubani@yahoo.com

Attorneys for Plaintiff-Appellant Harry Bolden

## CERTIFICATE OF COMPLIANCE

1.  This brief complies with type-volume limits because, excluding the parts of
    the document exempted by Fed. R. App. P. 32(f) (cover page, disclosure
    statement, table of contents, table of citations, signature block, certificates of
    counsel, addendum, attachments):

    [ X] this brief contains 8460  words.

2. This brief complies with the typeface and type style requirements because:

[ X] this brief has been prepared in a proportionally spaced typeface using [Microsoft Word] in [14pt Times New Roman]

Dated: February 20, 2025

<u>s/ Eric Nwaubani</u>
Eric  Nwaubani, Esq,

**<u>CERTIFICATE OF SERVICE</u>**

I certify that, on February 20, 2025 I electronically filed the foregoing Opening Brief of Appellant with the Clerk of Court for the United States Court of Appeals for the Fourth Circuit by using the CM/ECF system. The participants in the case are registered CM/ECF users and service will be accomplished by the appellate CM/ECF system.

I further certify that on April 1, 2024, I served the Joint Appendix via appellate CM/ECF system.


s/ Eric Nwaubani
 Eric Nwaubani, Esq,