**NO. 23-2195**

In The

# United States Court Of Appeals
# For The Fourth Circuit

### HARRY A. BOLDEN,

*Plaintiff – Appellant,*

**v.**

### BALTIMORE GAS AND ELECTRIC COMPANY,

*Defendant – Appellee,*

------------------------------

### EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,

*Amicus Curiae.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
AT BALTIMORE

————————

## REVISED BRIEF OF APPELLEE
## (AS PERMITTED BY THE COURT'S FEBRUARY 14, 2025 ORDER)

————————

**Lindsey White**
**Jill S. Distler**
**JACKSON LEWIS P.C.**
**2800 Quarry Lake Drive, Suite 200**
**Baltimore, Maryland 21209**
**(410) 415-2000 – Telephone**
**(410) 415-2001 – Facsimile**
**lindsey.white@jacksonlewis.com**
**jill.distler@jacksonlewis.com**

*Counsel for Appellee*

*Gibson*Moore Appellate Services, LLC
206 East Cary Street ♦ P.O. Box 1460 (23218) ♦ Richmond, VA 23219 ♦ 804-249-7770 ♦
www.gibsonmoore.net

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

## DISCLOSURE STATEMENT

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.


No. __23-2195__        Caption: __Harry A. Bolden v. CAEI, Inc. and Baltimore Gas and Electric Company__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__Baltimore Gas and Electric Company__
(name of party/amicus)

who is _____Appellee_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)


1.    Is party/amicus a publicly held corporation or other publicly held entity?    ☐YES ☑NO


2.    Does party/amicus have any parent corporations?    ☑YES ☐NO
      If yes, identify all parent corporations, including all generations of parent corporations:

      Baltimore Gas and Electric Company is a wholly-owned subsidiary of RF HoldCo LLC.  RF HoldCo LLC is a wholly-owned subsidiary of Exelon Energy Delivery Company, LLC.  Exelon Energy Delivery Company, LLC is a wholly-owned subsidiary of Exelon Corporation.


3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?    ☐YES ☑NO
      If yes, identify all such owners:

4.   Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation?  ☐YES ☑NO
     If yes, identify entity and nature of interest:

5.   Is party a trade association? (amici curiae do not complete this question)  ☐YES ☑NO
     If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.   Does this case arise out of a bankruptcy proceeding?  ☐YES ☑NO
     If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7.   Is this a criminal case in which there was an organizational victim?  ☐YES ☑NO
     If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: /s/ Lindsey A. White                    Date:    1/2/2024

Counsel for: Baltimore Gas and Electric Company

Print to PDF for Filing

# **TABLE OF CONTENTS**

Page

DISCLOSURE STATEMENT

TABLE OF AUTHORITIES.................................................................iv

JURISDICTIONAL STATEMENT ...........................................................1

STATEMENT OF ISSUES ...................................................................1

STATEMENT OF THE CASE.................................................................2

I.      NATURE OF THE CASE ............................................................2

II.     STATEMENT OF FACTS ...........................................................4

        A.      The Parties, And CAEI's Hiring Of Bolden..........................4

        B.      Bolden's "Employment" With CAEI ...................................5

        C.      Bolden's Termination From CAEI .....................................10

        D.      Bolden's Charge Of Discrimination...................................10

        E.      Procedural History........................................................11

                1.      Bolden Initially Sued CAEI And Exelon Business
                        Services Company, LLC .........................................11

                2.      Bolden Substituted BGE In Place Of Exelon BSC, BGE
                        Moved For Summary Judgment, And The District Court
                        Properly Granted Summary Judgment In Favor Of BGE.........14

                3.      Bolden Moved The District Court To Reconsider Its
                        Summary Judgment Ruling And, While That Motion Was
                        Pending, Filed A Notice Of Appeal With Respect To The
                        District Court's September 12, 2023 Summary Judgment
                        Ruling........................................................15

i

SUMMARY OF THE ARGUMENT ...................................................................16

ARGUMENT ..................................................................................................18

Standard of Review .......................................................................................18

Discussion .....................................................................................................19

I.   Bolden's Title VII Claims Against BGE Necessarily Fail Because
     Bolden Admitted In His Original Opening Brief That He Is Not Entitled
     To Protection Under Title VII....................................................................19

II.  This Court Should Affirm The District Court's Summary Judgment
     Ruling Because Bolden Failed To Exhaust His Administrative
     Remedies With Respect to BGE And Because, Even If This Court
     Adopts The Substantial Identity Test, The Test Is Not Satisfied ..................20

     A.   Bolden Was Required To Exhaust His Administrative Remedies
          Against BGE, And It Is Undisputed That Bolden Did Not Name
          BGE As A Respondent In His Charge...................................................21

          1.   In The Summary Judgment Briefing Below, Bolden Did
               Not Argue That He Had Somehow Identified BGE As A
               Respondent By Mentioning It In His Intake Form Or That,
               Because A BGE Employee Allegedly Participated In The
               MCCR Investigation Process, BGE Received Actual
               Notice That Bolden Was Asserting Claims Against It .............22

          2.   Even If Bolden's Arguments Are Not Waived, They Fail ........24

               a.  The Intake Form.................................................24

               b.  The Alleged Participation of BGE Employee Kadijah
                   Webster  In the Administrative Proceedings.......................26

     B.   The District Court Correctly Ruled That The Substantial Identity
          Exception Does Not Apply..................................................................29

          1.   Bolden Has No Evidence To Refute That He Knew BGE's
               Role When He Filed His MCCR Charge .................................30

2.     Bolden Did Not Set Forth Any Facts To Establish That CAEI's And BGE's Interests Are "So Similar" That It Was Unnecessary To Name BGE In The Charge ............................34

3.     Bolden Failed To Refute That BGE Was Prejudiced By Not Participating In The Underlying Administrative Proceeding.................................................................................41

4.     BGE Did Not Represent To Bolden That BGE's Relationship With Him Should Be Through CAEI .................47

III.   This Court Does Not Have Jurisdiction To Consider The District Court's Denial Of Bolden's Motion For Reconsideration............................50

IV.    Even If This Court Has Jurisdiction To Consider Bolden's Appeal Of The District Court's November 12, 2023 Order Denying Bolden's Motion For Reconsideration, The District Court's Order Should Be Affirmed Because The District Court Did Not Abuse Its Discretion In Denying Bolden's Motion ..............................................................52

CONCLUSION ................................................................................54

REQUEST FOR ORAL ARGUMENT....................................................56

CERTIFICATE OF COMPLIANCE ......................................................57

CERTIFICATE OF SERVICE ..............................................................57

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alexander v. Glut Food Coop*,
    546 Fed. Appx. 165 (4th Cir. 2013) ................................................................19

*Alvarado v. Bd. of Trs. of Montgomery Cmty. Coll.*,
    848 F.2d 457 (4th Cir. 1988) ..............................................................21, 23

*Balas v. Huntington Ingalls Indus., Inc.*,
    711 F.3d 401 (4th Cir. 2013) ..............................................................22, 45

*United States ex rel. Becker v. Westinghouse Savannah River Co.*,
    305 F.3d 284 (4th Cir. 2002) ........................................................................19

*Bouchat v. Baltimore Ravens Football Club*,
    346 F.3d 514 (4th Cir. 2003) ........................................................................18

*Bowe v. Colgate-Palmolive Co.*,
    416 F.2d 711 (7th Cir. 1969) ........................................................................21

*Bracey v. Lancaster Foods LLC*,
    838 Fed. Appx. 745 (4th Cir. 2020) ............................................................52

*Bright v. Le Moyne College*,
    306 F. Supp. 2d 244 (N.D.N.Y. 2004) ........................................................46

*In re CAEI, Inc.*,
    No. 1:18-bk-14656 (D. Md. Apr. 9, 2018) ..............................................12, 40

*Causey v. Balog*,
    162 F.3d 795 (4th Cir. 1998) ..............................................................28, 38

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986).......................................................................................18

*Cook v. Arrowsmith Shelburne, Inc.*,
    69 F.3d 1235 (2d Cir. 1995) ........................................................................47

*Daniel v. T&M Prot. Res., Inc.*,
      992 F. Supp. 2d 302 (S.D.N.Y. 2014) ....................................................40, 41

*E.E.O.C. v. 1618 Concepts, Inc.*,
      432 F. Supp. 3d 595 (M.D.N.C. 2020) .........................................................35

*Elzey v. Wal-Mart Assocs., Inc.*,
      No. RDB-11-2151, 2012 U.S. Dist. LEXIS 122158
      (D. Md. Aug. 28, 2012) ...............................................................21, 29, 30

*Francis v. Booz, Allen & Hamilton, Inc.*,
      452 F.3d 299 (4th Cir. 2006) ......................................................................19

*Gamble v. Charles County*,
      20-cv-3126-PWG, 2021 WL 3491823
      (D. Md. Aug. 9, 2021) ...............................................................42, 43, 44

*Hafez v. Avis Rent A Car Sys.*,
      2000 U.S. App. LEXIS 31032 (2d Cir. 2000) .............................................45

*Hartz v. Adm'rs of Tulane Educ. Fund*,
      275 Fed. App'x 281 (5th Cir. 2008) ...........................................................35

*Ingle ex rel. Estate of Ingle v. Yelton*,
      439 F.3d 191 (4th Cir. 2006) ......................................................................19

*Jones v. Calvert Grp., Ltd.*,
      551 F.3d 297 (4th Cir. 2009), *abrogated on other grounds by*
      *Fort Bend Cnty. v. Davis*, 139 S. Ct. 1843 (2019) .......................................21

*Lindblad v. J&L Services, Inc.*,
      No. 4:18-cv-1336-RBH-TER, 2019 U.S. Dist. LEXIS 25209
      (D.S.C. Jan. 30, 2019) ...........................................................................40, 45

*Marshall v. Anne Arundel Cty.*,
      No. SAG-18-0074, 2020 U.S. Dist. LEXIS 71083
      (D. Md. Apr. 22, 2020) ....................................................................30, 35, 45

*Mayes v. Moore*,
      419 F. Supp. 2d 775 (M.D.N.C. 2006) ........................................................40

*Muth v. United States*,
    1 F.3d 246 (4th Cir. 1993) ........................................................24, 36

*Pac. Ins. Co. v. Am. Nat'l Fire Ins. Co.*,
    148 F.3d 396 (4th Cir. 1998) .................................................19

*Phillips v. Goodwill Indus.*,
    No. GLR-14-3256, 2015 WL 3844089 (D. Md. June 19, 2015)..................29

*Piney Run Pres. Ass'n v. Cty. Comm'rs of Carroll Cty.*,
    523 F.3d 453 (4th Cir. 2008) .................................................30

*Rivera v. P.R. Home Attendants Servs., Inc.*,
    922 F. Supp. 943 (S.D.N.Y. 1996) ............................................47

*Robinson v. Wix Filtration Corp., LLC*,
    599 F.3d 403 (4th Cir. 2010) ............................................19, 52

*Sank v. City Univ. of N.Y.*,
    No. 94-cv-0253, 1995 U.S. Dist. LEXIS 7021
    (S.D.N.Y. May 24, 1995) ....................................................47

*Shaughnessy v. Duke Univ.*,
    No. 1:18-CV-461, 2018 WL 6047277
    (M.D.N.C. Nov. 19, 2018)...................................................30

*Singleton v. Wulff*,
    428 U.S. 106 (1976)........................................................24, 36

*Smith v. Delaware River Stevedores*,
    No. 07-1864, 2008 WL 4890135 (E.D. Pa. Nov. 10, 2008)........................48

*Terrell v. United States Pipe & Foundry Co.*,
    644 F.2d 1112 (5th Cir. 1981) ...............................................34

*Thomas v. Crush Enters.*,
    No. CIV-16-773-W, 2017 U.S. Dist. LEXIS 232606
    (W.D. Okla. Aug. 30, 2017) .................................................46

*Thompson v. Potomac Elec. Power Co.*,
    312 F.3d 645 (4th Cir. 2002) ............................................18, 31

*Tillman v. Boaz*,
    548 F.2d 592 (5th Cir. 1977) ........................................................34

*United States v. One 1971 Mercedes Benz 2-Door Coupe*,
    542 F.2d 912 (4th Cir. 1976) ...............................................24, 37

*Wall Guy, Inc. v. FDIC*,
    95 F.4th 862 (4th Cir. 2024) ........................................................51

*Walton v. Harker*,
    33 F.4th 165 (4th Cir. 2022) ........................................................18

*Williams v. City of Columbus*,
    892 F. Supp. 2d 918 (S.D. Ohio 2012) .........................................47

**Statutes**

28 U.S.C. § 1291 ...............................................................................1

42 U.S.C. § 2000e-5(f)(1) ...............................................................21

Civil Rights Act of 1964 Title VII ..............................................*Passim*

**Rules**

Fed. R. App. P. 4 .............................................................................51

Fed. R. App. P. 4(a)(4)(A) ...............................................................51

Fed. R. App. P. 4(a)(4)(A)(iv) .........................................................51

Fed. R. App. P. 4(a)(4)(B)(i) ............................................................51

Fed. R. App. P. 4(a)(4)(B)(ii) .....................................................51, 52

Fed. R. Civ. P. 56(a) ........................................................................18

Fed. R. Civ. P. 59 .......................................................................51, 52

Fed. R. Civ. P. 59(e) ................................................................*Passim*

Fed. R. Civ. P. 60 ............................................................................52

**Other Authorities**

*Fact-Finding Conference*,
 https://mccr.maryland.gov/Pages/Fact-Finding-Conference.aspx,
    Last visited May 23, 2024 ..............................................................44

## JURISDICTIONAL STATEMENT

This Court has jurisdiction pursuant to 28 U.S.C. § 1291 to review the District Court's September 12, 2023 Order granting Baltimore Gas and Electric Company's ("BGE") Motion for Summary Judgment and dismissing Appellant, Harry Bolden's ("Bolden") claims. However, this Court lacks jurisdiction over an appeal of the District Court's November 12, 2023 Order denying Bolden's Motion for Reconsideration of the District Court's summary judgment ruling because Bolden did not file a notice of appeal with respect to that November 12, 2023 Order.

## STATEMENT OF ISSUES

Appellee, BGE, does not claim any error by the District Court and presents the following issues for the Court of Appeals' determination:

1. Whether, as an initial matter, the District Court's Order granting BGE's Motion for Summary Judgment should be affirmed because Bolden admitted in his Original Opening Brief that he was not an employee of BGE for purposes of Title VII of the Civil Rights Act of 1964, that he was "not eligible for protection under Title VII of the Civil Rights Act of 1964," and that he was "not within the scope of Title VII's coverage."

2. Whether the District Court's Order granting BGE's Motion for Summary Judgment should otherwise be affirmed because Bolden failed to exhaust his administrative remedies with respect to BGE and because, even if the Court

adopts the substantial identity test, BGE and CAEI Inc. ("CAEI") do not satisfy the substantial identity exception.

3. Whether this Court has jurisdiction over Bolden's appeal of the District Court's November 12, 2023 Order denying Bolden's Motion for Reconsideration of the District Court's summary judgment ruling.

4. Whether, even if this Court does have jurisdiction over the District Court's November 12, 2023 Order denying Bolden's Motion for Reconsideration, the District Court's Order should be affirmed because the District Court did not abuse its discretion in denying Bolden's Motion for Reconsideration.

## STATEMENT OF THE CASE

### I.    NATURE OF THE CASE

This case arises out of CAEI's relationship with its employee, Harry Bolden, and its decision to terminate that employment relationship.  BGE did not employ Bolden.   Rather, BGE contracted with CAEI, which was a minority-owned business,[1] to provide billing specialists for its Collections Strategy Pilot.  This program focused on collecting outstanding funds due on bills from BGE's customers.   In his capacity as a CAEI employee, Bolden worked as a billing specialist on BGE's pilot program.

---

[1] CAEI is defunct and did not participate in the litigation before the District Court. JA368.

2

CAEI terminated Bolden in February 2016 after he demonstrated concerning and unprofessional behavior toward CAEI management and after three female CAEI employees reported to CAEI management that Bolden made inappropriate and threatening comments to them referencing that he could kill them with a knife and put their bodies in the trunk of his new car and no one would know.

On October 17, 2016, Bolden filed a Charge of Discrimination ("Charge") with the Maryland Commission on Civil Rights ("MCCR") solely against CAEI. JA147-148. Bolden has admitted that he did not file a Charge against BGE. JA153. Despite this, Bolden filed a lawsuit in the United States District Court for the District of Maryland, in which he filed a three count Amended Complaint against both CAEI and BGE, alleging that both entities discriminated against him based on his race (male) and sex (African American), harassed him based on his race and sex, and retaliated against him when CAEI terminated him, all in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"). JA72-78.

After the close of discovery, during which Bolden, who was represented by counsel, took no depositions, BGE moved for summary judgment on the grounds that (1) Bolden did not satisfy his administrative prerequisites to filing suit against BGE because he failed to name BGE in his Charge, and the substantial identity exception to the naming requirement does not apply; (2) BGE did not jointly employ Bolden; and (3) Bolden did not experience discrimination, harassment, or

retaliation under Title VII.  On September 12, 2023, the District Court correctly granted BGE's motion for summary judgment because (1) it was undisputed that Bolden did not name BGE in his Charge, Bolden failed to generate evidence on which a reasonable juror could conclude that the substantial identity exception applies, and by failing to name BGE in his Charge, Bolden failed to exhaust his administrative remedies against BGE; and (2) to the extent that Bolden claims that BGE was a "joint employer," he still was required to file a Charge against BGE in order to pursue his claims against BGE.  The District Court did not reach BGE's third argument.

Although Bolden asked the District Court to reconsider its summary judgment ruling, and the District Court properly denied his motion, Bolden did not file a Notice of Appeal regarding the District Court's order denying his motion to reconsider. Accordingly, this Court lacks jurisdiction over an appeal of that decision.  Even if this Court did have jurisdiction, the District Court did not abuse its discretion in denying the motion to reconsider.

## II.    STATEMENT OF FACTS

### A.    The Parties, And CAEI's Hiring Of Bolden

CAEI, which is currently defunct, was Bolden's "employer."  SA3.  It was headquartered at 9256 Bendix Road in Columbia, Maryland, and it provided information and technology consulting and professional services to companies,

4

including BGE. JA125-126. BGE is central Maryland's largest gas and electric utility company. JA131.

CAEI was a separate and distinct entity from BGE, and CAEI did not share any corporate or business identity with BGE. JA126. CAEI, whose workforce was over 90% Black, took pride in being a minority-owned business and employing diverse employees. JA125-126, SA15.

CAEI entered into a contractual relationship with BGE with the intention that CAEI would be the entity responsible for the management of CAEI's own employees. JA126. Bolden applied for employment by physically going to CAEI's office at 9256 Bendix Road in Columbia, Maryland. JA219. BGE did not have an office on Bendix Road, nor was the location jointly operated by BGE. JA126, JA219. After completing the application, CAEI's Human Resources Director Kia Smoot (Black female) interviewed Bolden. JA127, JA220. CAEI was solely responsible for hiring its employees, and CAEI's Vice President of Operations, Raymond Hubbard made the decision to hire Bolden. JA125-126.

## B. Bolden's "Employment" With CAEI

Bolden accepted a position with CAEI to work in BGE's financial solutions department program as a billing specialist. JA307. His first day of employment with CAEI was September 12, 2014. JA226. The financial solutions program was a pilot program and, at the time, planned to be a three (3) to six (6)

month program. JA306. Bolden ultimately worked on the financial solutions program his entire tenure with CAEI, which was until February 2016. SA35, SA53. CAEI employed all of the billing specialists for BGE's financial solutions collections program, where Bolden worked. JA126, JA309.

On September 12, 2014, Bolden executed a "Temporary Worker Agreement." SA22-23, JA134-138. CAEI employees were made aware of the relationship between CAEI and BGE through the Temporary Worker Agreement at the outset of their employment. JA127. The Temporary Worker Agreement is between Bolden, the "temporary worker," and CAEI, who is defined as the "temporary worker's employer." JA134. Bolden was aware that CAEI was defined as his employer in the Temporary Worker Agreement. SA22-24. The Temporary Worker Agreement further states that CAEI contracted with Pontoon Solutions, defined as "Vendor," to provide certain services to Vendor's Customer's "temporary workforce." "Customer" is defined as Exelon Business Services Company. JA134. Exelon Business Services Company, LLC, and BGE are both fully owned subsidiaries of Exelon Corporation. JA368.

Importantly, the Temporary Worker Agreement provides that:

Temporary Worker acknowledges and agrees that no employment relationship between Temporary Worker and Customer or between Temporary Worker and Vendor is created by this Agreement, the agreement between Vendor and Customer, or by Employer's agreement with Vendor.

JA134. When he signed the Temporary Worker Agreement at the time of his hire, Bolden was aware that CAEI was a separate entity from Exelon and BGE. SA25, SA27, SA68.

After Bolden accepted employment with CAEI, he attended a CAEI orientation conducted by Ms. Smoot and Mr. Hubbard, which took place at CAEI's headquarters. SA9. During orientation, Bolden received a CAEI Employee Handbook. SA11. The CAEI Handbook was the operative Human Resources manual for Bolden. JA127. Bolden was aware that the CAEI Handbook had policies prohibiting discrimination and harassment on the basis of protected characteristics, including race and sex, and retaliation, as well as a policy that complaints were to be directed to Human Resources. JA140-141, SA41-42. CAEI also had a Workplace Violence Policy, which provided that "Violence, threats, harassment, intimidation, and other disruptive behavior in our workplace will not be tolerated." SA43, JA143.

Bolden, and the other billing specialists, sat in the same area and performed their work from individual cubicles. SA29. CAEI supervisors, called "team leads," supervised Bolden, and the team leads were on site daily. SA20-21. Originally, Debra Chew (Latina) supervised Bolden, then Tabitha Horn (African American), and then Angelique Watts (African American). SA12-13, SA15. These three Team Leads supervised Bolden in succession, did not overlap in time, and were Bolden's

primary contacts to address work-related questions or issues. SA21. Bolden directed questions about pay or benefits to Ms. Smoot or to his Team Lead. SA17-18. Ms. Smoot also informed Bolden of his schedule when he worked for CAEI. SA18. The CAEI Team Leads communicated schedule changes. SA19.

CAEI issued Bolden's paychecks. SA18. CAEI provided Bolden with employment benefits (*e.g.*, health insurance) and paid into worker's compensation and unemployment insurance for Bolden. JA127. CAEI, not BGE, evaluated Bolden's performance and was responsible for issuing any discipline or making termination decisions. SA28, SA32-33.

Ms. Watts began supervising Bolden in approximately April 2015. SA34. Bolden believed that Ms. Watts had favorites, including co-worker, Otis Rease (Black/Indian male), and that Bolden was not one of her favorites. SA51, SA82. Ms. Watts moved Bolden's cubicle on several occasions. SA30-31.

On February 4, 2016, Bolden called Ms. Smoot to request to be moved to a different department. SA87-90. During this call, he told Ms. Smoot about challenges he was having with Ms. Watts. SA64. Specifically, Bolden told Ms. Smoot that Ms. Watts repeatedly asked him to serve food to his team during group celebrations and meals. SA92-93.

Bolden never reported to either Ms. Smoot or Mr. Hubbard that Ms. Watts told him to "thug it up." SA92-94. He also never reported that he believed he

8

was being "harassed" on the basis of his sex or race. SA87-93, JA128 (Bolden raised general work-related complaints about Ms. Watts but never that she was treating him differently because of race or sex). Bolden did not complain to HR, or anyone else, prior to February 4, 2016. SA90.

On February 5, 2016, Bolden met with Mr. Hubbard and Ms. Watts to discuss Bolden's reaction to having his seat being moved in the call center. SA72-73. Ms. Watts claimed that Bolden had thrown his headset at her and pushed her in response to asking Bolden to move his seat. SA73.

Thereafter, Mr. Hubbard was notified that three female CAEI employees said that Bolden had made inappropriate and threatening comments to them referencing that he could kill them with a knife and put their bodies in the trunk of his new car and that no one would know. JA128. As a result, these employees did not want to continue to work with Bolden. JA128. Shortly after learning about the complaint, on February 11, 2016, Bolden met with Mr. Hubbard and Ms. Smoot at CAEI's facility. SA74. During this meeting, Bolden was placed on paid leave and was sent home for the day. SA75.

During this time, Bolden applied for a position with BGE through BGE's website. SA65-68.

### C.    Bolden's Termination From CAEI

On February 12, 2016, Mr. Hubbard terminated Bolden by phone.  SA75.

Mr. Hubbard made the decision to terminate Bolden. JA128-129.  CAEI terminated

Bolden based on his agitated demeanor during the February 5, 2016 meeting, and

also due to inappropriate and threatening reports from three female CAEI employees

that said Bolden had made inappropriate and threatening comments to them

referencing that he could kill them with a knife and put their bodies in the trunk of

his new car and no one would know. JA128-129.  BGE did not provide input into

the decision to terminate Bolden. JA129, JA132, SA14.

Bolden admitted that he kept a cake knife in his drawer, rather than the

office kitchen, but that he did not think the knife was "sharp enough to penetrate

anyone, unless done with a great amount of force."  SA61-62.  He also got a new car

on or around January 27, 2016.  JA145.

Following his termination, Bolden did not file for unemployment

insurance against BGE, only CAEI. SA4.

### D.    Bolden's Charge Of Discrimination

On October 17, 2016, Bolden filed a Charge of Discrimination solely against

CAEI with the MCCR. JA24-25.  Bolden did not file a Charge of Discrimination against

BGE or Exelon. JA153. On November 3, 2016, the EEOC issued the Notice of the

Charge of Discrimination to CAEI Human Resources Director, Ms. Smoot. JA156-157.

During its investigation, the MCCR conducted a fact-finding conference, which included Bolden and CAEI employees Ms. Smoot, Mr. Hubbard, Mr. Barnett (CAEI's CEO), and Mr. Rease. SA36-37.  No one from BGE or Exelon attended. SA36-37.

During the MCCR fact-finding conference, Bolden and CAEI entered into a Settlement Agreement to resolve the matter. Both Bolden and CAEI signed the Settlement Agreement. SA63, JA159-162. BGE did not participate in these discussions. SA36-37, SA63.  Bolden does not know whether MCCR interviewed any witnesses during the investigation of the Charge.  SA38. The MCCR file does not contain interview notes of any BGE employee. Although BGE employee, Khadija Duncan (formerly Webster), was mentioned in the MCCR's Written Finding, she executed a declaration stating that she was not interviewed by the MCCR. JA165.  There is no evidence to the contrary.

On September 23, 2020, the MCCR issued a Written Finding of No Probable Cause. JA167-180. The EEOC issued a copy of the Notice of Right to Sue to CAEI on June 10, 2021. JA182-183.

### E.    Procedural History

#### 1.    Bolden Initially Sued CAEI And Exelon Business Services Company, LLC

On September 7, 2021, Bolden filed this lawsuit in the District Court against CAEI and Exelon Business Services Company, LLC ("Exelon BSC") alleging

claims of discrimination and harassment based on race and sex, and retaliatory discharge, in violation of Title VII. CAEI had filed a voluntary petition for Chapter 7 bankruptcy on April 9, 2018, in the United States Bankruptcy Court for the District of Maryland. *See* Bankruptcy Petition, *In re CAEI, Inc.*, No. 1:18-bk-14656 (D. Md. Apr. 9, 2018). That bankruptcy petition, of which this Court can take judicial notice, did not reference BGE or Exelon BSC. CAEI did not respond to Bolden's Complaint, and Bolden made no efforts to obtain discovery from CAEI during this lawsuit.

On February 25, 2022, Exelon BSC moved to dismiss all claims against it because Bolden failed to file a Charge of Discrimination against Exelon BSC and, therefore, failed to exhaust administrative remedies as to Exelon BSC. JA7-22. Exelon BSC argued that Bolden did not name Exelon BSC in his Charge; rather he named only CAEI. Exelon BSC also argued that it did not receive fair notice of the Charge or opportunity to conciliate, and that, if formally adopted by the Fourth Circuit, the substantial identity test does not apply. JA7-22.

On May 9, 2022, the District Court denied Exelon BSC's Motion to Dismiss. The District Court stated that, "*[f]or purposes of the Motion only*, the court is satisfied that Exelon management was aware of, and in fact was interviewed during, the administrative process; and, therefore, that Exelon was not prejudiced by [Bolden's] failure to identify Exelon as a party to his administrative charge." JA70

12

(emphasis added). In reaching this decision, the District Court, as it must on a Motion to Dismiss, assumed the truth of Bolden's allegations in his Complaint. JA70. The District Court also considered the MCCR's Written Findings, which the District Court surmised referenced an interview with Ms. Kadijah Webster, a manager with Exelon. JA70. In fact, the MCCR's Written Findings cited Bolden's allegation that Ms. Webster "falsely accused [him] of violating the employee conduct policy relative to logging in and out of [his] computer" and then stated that, "[a]ccording to Ms. Webster, the Complainant left his computer log on." JA168-169. This does not mean that the MCCR interviewed Ms. Webster. Rather, it may simply be a reference to what Bolden told the MCCR that Ms. Webster had stated to him. In fact, Ms. Webster (whose married name is now Kadijah Duncan) executed a declaration stating that she was never interviewed by the MCCR. JA165. Bolden did not depose Ms. Webster (Duncan) during the litigation. Bolden admitted that he does not know whether MCCR interviewed any witnesses during the investigation of the Charge. SA37-38.

Regardless, as the District Court stated, its decision was for purposes of the Motion to Dismiss only, was based in part on an assumption that the allegations in the Complaint were true, and the District Court "decline[d] to dismiss the complaint in favor of allowing the parties to exchange discovery that will more fully establish the relationship between the Defendants as relates to Plaintiff's Title VII claims." JA70.

13

As discussed below, once discovery was completed, it was clear that Bolden did not have evidence to demonstrate that he was employed by BGE, that he named BGE in his Charge, or that the substantial identity exception should apply.

> **2.    Bolden Substituted BGE In Place Of Exelon BSC, BGE Moved For Summary Judgment, And The District Court Properly Granted Summary Judgment In Favor Of BGE**

On November 30, 2022, with the District Court's permission, Bolden filed an Amended Complaint to replace Exelon BSC with BGE as the proper Defendant. Although Bolden did not name BGE (or Exelon BSC) in the Charge and, therefore, did not exhaust his administrative remedies with respect to BGE, Bolden filed a three count Amended Complaint against both CAEI and BGE alleging violations of Title VII of the Civil Rights Act of 1964 ("Title VII").  The Amended Complaint alleged that both entities discriminated against him based on his race (male) and sex (African American), harassed him based on his race and sex, and retaliated against him when CAEI terminated him, all in violation of Title VII.  JA72-78.  Bolden named Exelon BSC, and then BGE, as a co-defendant to CAEI in his lawsuit, presumably because CAEI filed for bankruptcy in 2018 and is now defunct.

BGE and CAEI subsequently conducted discovery. Bolden, who was represented by counsel, took no depositions during discovery.  After the close of discovery, BGE moved for summary judgment because (1) Bolden did not satisfy his administrative prerequisites because he failed to name BGE in his Charge, and

14

the substantial identity exception to the naming requirement does not apply; (2) BGE did not jointly employ Bolden; and (3) even if Bolden could sue BGE, Bolden did not experience discrimination, harassment, or retaliation under Title VII. JA79-123.

On September 12, 2023, the District Court correctly granted BGE's motion for summary judgment because (1) it was undisputed that Bolden did not name BGE in his Charge, Bolden failed to generate evidence on which a reasonable juror could conclude that the substantial identity exception applies, and by failing to name BGE in his Charge, Bolden failed to exhaust his administrative remedies against BGE; and (2) to the extent that Bolden claims that BGE was a "joint employer," he still was required to file a Charge against BGE in order to pursue his claims against BGE. JA368-390. The District Court did not address BGE's third argument.

### 3. Bolden Moved The District Court To Reconsider Its Summary Judgment Ruling And, While That Motion Was Pending, Filed A Notice Of Appeal With Respect To The District Court's September 12, 2023 Summary Judgment Ruling

On September 26, 2023, Bolden filed a motion for reconsideration of the District Court's summary judgment ruling under Rule 59(e) of the Federal Rules of Civil Procedure. JA391-396. While the motion was pending, on October 11, 2023, Bolden filed a Notice of Appeal, stating that he was appealing the District Court's September 12, 2023 Order granting summary judgment to BGE. JA436.

On November 12, 2023, the District Court entered an order properly denying Bolden's motion for reconsideration. JA437-438. Bolden did not file a notice of appeal, or an amended notice of appeal, with respect to that order.

After the parties filed their briefs on appeal, this Court issued an Order stating that it appeared that Bolden's brief (hereinafter "Original Opening Brief") may have been written with the use of AI, directing Bolden to file a revised brief, and stating that BGE may file a response to Bolden's revised brief. Court's Order, ECF No. 76. Bolden has since filed a revised brief. ECF No. 78 (hereinafter "Brief"). Accordingly, as permitted by the Court, BGE hereby files its response to Bolden's Brief.

## SUMMARY OF THE ARGUMENT

This Court should affirm the District Court's decision granting summary judgment in favor of BGE. As an initial matter, BGE notes that in Bolden's Original Opening Brief, Bolden stated that he was <u>not</u> an employee of BGE for purposes of Title VII of the Civil Rights Act of 1964, that he was "not eligible for protection under Title VII of the Civil Rights Act of 1964," and that he was "not within the scope of Title VII's coverage." Bolden's Original Opening Brief, ECF No. 24, pp. 25, 49-50.[2] Although Bolden omitted these statements from his revised Brief, that

---

[2] References to Bolden's Original Opening Brief, Bolden's Brief, and the EEOC's amicus brief are to the ECF page numbers at the top of the respective brief.

does not erase the fact that Bolden conceded, before this Court, that he was not an employee of BGE and was not covered by Title VII, and his Title VII claims necessarily fail.

Even if Bolden was an employee of BGE subject to the protections of Title VII, the Court should affirm the District Court's decision because there are no genuine issues of material fact that Bolden failed to exhaust his administrative remedies against BGE. Should the Court adopt the substantial identity exception, the Court should nonetheless conclude that BGE and CAEI do not share an identity of interests such that naming CAEI in the administrative Charge can fairly result in Bolden also suing BGE for his Title VII claims. In addition, the EEOC argues that this Court should vastly expand factors one through three of the substantial identity test, which is a narrow exception to Title VII's naming requirement applied by several district courts in the Fourth Circuit. This Court should reject the EEOC's arguments, as the EEOC's proposed test would swallow the exception to the requirement that non-parties receive notice of alleged Title VII violations through charges of discrimination prior to being subject to a lawsuit.

This Court lacks jurisdiction to consider the District Court's order denying Bolden's motion for reconsideration because Bolden did not file any notice of appeal with respect to the District Court's order. Even if this Court does have jurisdiction, the District Court did not abuse its discretion in denying Bolden's motion. Bolden

17

did not cite in his motion for reconsideration evidence that was not previously unavailable to him, the evidence that he cited did not generate a dispute of material fact, and Bolden simply sought to relitigate the summary judgment motion.

## ARGUMENT

## Standard of Review

The standard of review applicable to an order granting a motion for summary judgment is *de novo*. *Walton v. Harker*, 33 F.4th 165, 171 (4th Cir. 2022). Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A movant for summary judgment need only show that there is an absence of evidence or support for the opposing party's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986). Where the nonmovant fails to identify specific facts that demonstrate a genuine and material issue for trial, then the court must grant summary judgment "to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Baltimore Ravens Football Club*, 346 F.3d 514, 526 (4th Cir. 2003) (citing *Celotex*, 477 U.S. at 323-24).

A plaintiff cannot create a genuine issue of material fact through unsubstantiated assertions, conclusory allegations, or speculation devoid of supporting facts or authority. *Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649 (4th Cir. 2002). Indeed, "[m]ere unsupported speculation is not sufficient to

defeat a summary judgment motion if the undisputed evidence indicates that the other party should win as a matter of law." *Francis v. Booz, Allen & Hamilton, Inc.*, 452 F.3d 299, 308 (4th Cir. 2006).

The District Court's denial of Bolden's Rule 59(e) motion for reconsideration is reviewed for an abuse of discretion. "This court reviews the denial of a Rule 59(e) motion under the deferential abuse of discretion standard." *Robinson v. Wix Filtration Corp., LLC*, 599 F.3d 403, 407 (4th Cir. 2010) (citing *Ingle ex rel. Estate of Ingle v. Yelton*, 439 F.3d 191, 197 (4th Cir. 2006)); *see also Alexander v. Glut Food Coop*, 546 Fed. Appx. 165, 166 (4th Cir. 2013) (per curiam) (applying abuse of discretion standard in appeal of order denying motion for reconsideration under Rule 59(e)); *United States ex rel. Becker v. Westinghouse Savannah River Co.*, 305 F.3d 284, 290 (4th Cir. 2002) ("We review for abuse of discretion a district court's denial of a Rule 59(e) motion." (citing *Pac. Ins. Co. v. Am. Nat'l Fire Ins. Co.*, 148 F.3d 396, 402 (4th Cir. 1998))).

## <u>Discussion</u>

**I.    Bolden's Title VII Claims Against BGE Necessarily Fail Because Bolden Admitted In His Original Opening Brief That He Is Not Entitled To Protection Under Title VII**

Bolden filed his claims against BGE solely under Title VII of the Civil Rights Act of 1964.  JA72-73, JA75-77 (stating that the District Court had jurisdiction pursuant to Title VII and alleging that BGE discriminated against, harassed, and

19

retaliated against Bolden in violation of Title VII).  Significantly, however, Bolden conceded in his Original Opening Brief that he was not an employee of BGE for purposes of Title VII and that he was not eligible for protection under, or covered by, Title VII.  Bolden's Original Opening Brief, ECF No. 24, pp. 25, 49-50 (stating, *inter alia*, that "Plaintiff is Ineligible for Title VII Protection," that Bolden was "not eligible for protection under Title VII," and that, Bolden was "not Within The Scope of Title VII's Coverage").

Apparently recognizing that these concessions in his Original Opening Brief are fatal to his entire case, Bolden omitted them from his revised Brief.  It would be unfair, and would provide a windfall to Bolden, if he were permitted to benefit from this Court's requirement that he file a revised brief (due to integrity concerns raised by the Court) by deleting concessions fatal to his case and having those concessions ignored moving forward.  Accordingly, BGE requests that this Court still consider the concessions that Bolden made in his Original Opening Brief.  Based on these concessions, his Title VII claims against BGE necessarily fail, and the District Court's Order granting summary judgment in favor of BGE should be affirmed.

## II.   This Court Should Affirm The District Court's Summary Judgment Ruling Because Bolden Failed To Exhaust His Administrative Remedies With Respect to BGE And Because, Even If This Court Adopts The Substantial Identity Test, The Test Is Not Satisfied

Even if Bolden is covered by Title VII, this Court should affirm the District Court's summary judgment ruling because Bolden failed to exhaust his

administrative remedies with respect to BGE and because there is no genuine dispute of material fact that BGE and CAEI do not satisfy the substantial identity exception.

**A.    Bolden Was Required To Exhaust His Administrative Remedies Against BGE, And It Is Undisputed That Bolden Did Not Name BGE As A Respondent In His Charge**

Prior to filing suit under Title VII, a plaintiff must exhaust his administrative remedies "against the respondent named in the charge." 42 U.S.C. § 2000e-5(f)(1). One of the administrative prerequisites is filing "a charge of discrimination with the EEOC." *Jones v. Calvert Grp., Ltd.*, 551 F.3d 297, 300 (4th Cir. 2009), *abrogated on other grounds by Fort Bend Cnty. v. Davis*, 139 S. Ct. 1843, 1849 (2019). The scope of the plaintiff's right to sue is limited to the parties identified and practices complained of in the charge of discrimination. *Id.* "[T]he failure to name a party on a charge filed with the [EEOC] constitutes a failure to exhaust administrative remedies." *Elzey v. Wal-Mart Assocs., Inc.*, No. RDB-11-2151, 2012 U.S. Dist. LEXIS 122158, at *8 (D. Md. Aug. 28, 2012) (citing *Alvarado v. Bd. of Trs. of Montgomery Cmty. Coll.*, 848 F.2d 457, 458-59 (4th Cir. 1988)); *see also* 42 U.S.C. § 2000e-5(f)(1).

Title VII's naming requirement serves dual purposes: (1) to notify the charged party of the asserted violation and (2) to bring the charged party before the agency to facilitate the goal of securing voluntarily compliance with the law. *Alvarado*, 848 F.2d at 458-59 (citing *Bowe v. Colgate-Palmolive Co.*, 416 F.2d 711, 719 (7th Cir.

1969)). As this Court has explained, notice to the employer of the alleged discrimination "gives the employer the chance to voluntarily conduct its own investigation and attempt to resolve any discriminatory actions internally." *Balas v. Huntington Ingalls Indus., Inc.*, 711 F.3d 401, 407 (4th Cir. 2013).

Here, it is undisputed that Bolden failed to name BGE in the Charge of Discrimination that he filed with the MCCR. JA153. In its Request for Admissions, BGE asked Bolden to "[a]dmit that you did not file a Charge of Discrimination against BGE or Exelon Business Services Corporation," and Bolden responded, "ADMIT." *Id.*; *see also* JA24-25 (Bolden's Charge names only CAEI as the respondent and contains absolutely no reference to BGE).

In his Brief, however, Bolden argues that by referencing BGE in his MCCR intake form, he sufficiently identified it as a respondent and that because a BGE witness was allegedly interviewed by the MCCR, the notice requirement was satisfied. As discussed below, Bolden waived these arguments by not raising them before the District Court, and Bolden's arguments otherwise fail.

1.    **In The Summary Judgment Briefing Below, Bolden Did Not Argue That He Had Somehow Identified BGE As A Respondent By Mentioning It In His Intake Form Or That, Because A BGE Employee Allegedly Participated In The MCCR Investigation Process, BGE Received Actual Notice That Bolden Was Asserting Claims Against It**

In Section I.A. of Bolden's Brief, he argues that 1) BGE had actual notice of the proceeding against it, and 2) this alleged "actual notice" should subject BGE to

22

suit.  The EEOC also urges the Fourth Circuit to adopt the actual notice exception to Title VII's notice requirement. In addition, the EEOC requests the Fourth Circuit also adopt an exception to the notice requirement when the charge's substantive factual allegations sufficiently implicate an unnamed party, or the unnamed party was involved in the discriminatory conduct alleged. The purpose of Title VII's notice requirement is so that an employer is aware that an individual is asserting claims against that particular employer.  To allow a factual allegation in a charge of discrimination that has not been provided to an employer, and/or the employer has no awareness that it could be potentially responsible for such allegations, to satisfy the notice requirement wholly undermines the purpose of the notice requirement.

However, in his summary judgment briefing before the District Court, Bolden argued that he could sue BGE only under the substantial identity exception, and acknowledged that "a plaintiff's failure to name a party within an EEOC charge would prohibit suit against the party for failure to exhaust administrative remedies." JA199 (citing *Alvarado v. Bd. of Trs. of Montgomery Cmty. Coll.*, 848 F.2d 457, 458-59 (4th Cir. 1988)).  Bolden did not argue that he had somehow exhausted administrative remedies by mentioning BGE in his intake form or that BGE had actual notice that Bolden was asserting claims against it.  Rather, he simply argued that this Court should apply the substantial identity exception to the naming rule. JA199-200. Bolden, therefore, conceded before the District Court that he had failed

23

to name BGE in his underlying Charge and that he must demonstrate that the substantial identity exception applies in order to survive summary judgment. *See also* JA153 (admitting he did not name BGE or Exelon BSC in a Charge of Discrimination). He, therefore, cannot now argue, as he does in his Brief, that the District Court failed to consider whether Bolden could sue BGE pursuant to an actual notice theory.

Generally, issues that were not raised in the district court will not be addressed on appeal. *See Singleton v. Wulff*, 428 U.S. 106, 120 (1976); *Muth v. United States*, 1 F.3d 246, 250 (4th Cir. 1993) (explaining that issues not raised in district court will generally not be considered on appeal); *United States v. One 1971 Mercedes Benz 2-Door Coupe*, 542 F.2d 912, 915 (4th Cir. 1976) (explaining that the failure to raise and preserve issue in district court waives consideration of that issue on appeal absent exceptional circumstances). Bolden, therefore, has waived these arguments and cannot now argue, for the first time, that he somehow named BGE as a respondent by mentioning it in the intake form or that BGE had actual notice that he asserted, or intended to assert, claims against it.

## 2.     Even If Bolden's Arguments Are Not Waived, They Fail

### a.  The Intake Form

On appeal, Bolden does not claim that BGE was named as a respondent in his Charge, nor could he given that he has admitted that he did not file his Charge against

BGE. Rather, Bolden asserts that in his MCCR intake forms, he identified BGE as a party against whom he seeks redress and that it was not reasonable to expect him to know that BGE should have been listed separately as a party. Bolden's Brief, ECF No. 78, pp. 17, 30. He, therefore, appears to argue that he sufficiently named BGE as a respondent because he mentioned it in the intake form. As discussed below, this argument fails.

First, the intake form, JA185, does not identify BGE as a respondent and does not, as Bolden claims, state that Bolden was seeking remedies from BGE. Rather, the intake form lists only CAEI, Inc. as the respondent. JA185 (Bolden listed the Charge Name as "Mr. Harry Bolden v. CAEI, Inc."). Although Bolden states in the form, "I had only acted professionally in my time at CAEI & BGE," he explicitly lists CAEI as the only entity from whom he is seeking remedies. He states, "I therefore ask that the company CAEI be made an [sic] of this harmful mistake; that compensatory and punitive damages be granted for what I have indured [sic]." JA185.

Second, Bolden cites to no legal or factual support for the proposition that simply referencing a company in an intake form, which is not even served on any entity during the administrative process, suffices to exhaust administrative remedies against that company or to put that company on notice that the charging party is asserting claims against that company.

25

**b. The Alleged Participation of BGE Employee Kadijah Webster In the Administrative Proceedings**

Bolden argues in his Brief that BGE employee Kadijah Webster (now named Kadijah Duncan) participated in the MCCR's administrative proceedings. He references the MCCR's Written Finding, which states that "[a]ccording to Ms. Webster, the Complainant left his computer log [sic] on" JA168-169, and the District Court's denial of Exelon's motion to dismiss, in which the District Court surmised that the MCCR's Written Finding referenced an interview with Ms. Webster. JA70.

There is absolutely no evidence that Ms. Webster, or any other BGE witness, was interviewed by the MCCR, participated in any MCCR fact-finding conference, or otherwise participated in the MCCR administrative proceedings. Ms. Webster stated under penalty of perjury that she was never interviewed by the MCCR. JA165 ("I was not interviewed by the MCCR in connection with Mr. Bolden's Charge of Discrimination against CAEI."). Although the MCCR's Written Finding references Ms. Webster, it does not state that the MCCR ever interviewed her. JA167-180. There is no evidence that the MCCR's use of the phrase "according to Ms. Webster," meant that the MCCR actually spoke to Ms. Webster. Rather, it appears the MCCR included that remark in response to Bolden's allegation that Ms. Webster "falsely accused [him] of violating the employee conduct policy relative to logging in and out of [his] computer." JA168-169. Thus, the phrase "according to Ms. Webster"

26

could simply have been a reference to what Bolden claimed Ms. Webster told him. Bolden did not depose Ms. Webster or present any evidence to create a genuine issue of fact on this point.

Bolden also references the District Court's ruling denying Exelon BSC's motion to dismiss in which the District Court, referencing the MCCR's Written Finding, surmised that the MCCR had interviewed Ms. Webster. JA70. The District Court's ruling, however, is not evidence that the MCCR interviewed Ms. Webster, nor is it controlling on this point. As the District Court stated, its decision was "for purposes of the Motion [to Dismiss] only," was based in part on an assumption that the allegations in the Complaint were true, and was made for the purpose of "allowing the parties to exchange discovery that will more fully establish the relationship between the Defendants as relates to Plaintiff's Title VII claims." JA70. Thus, by its very terms, the District Court's ruling did not extend beyond the motion to dismiss, and discovery was required to determine whether Bolden exhausted his administrative remedies. As discussed above, once discovery was completed, it was clear, based on Ms. Webster's declaration, that she in fact was not interviewed by the MCCR, and Bolden did not offer any evidence to the contrary.

Moreover, even if Ms. Webster or any other BGE employee had been interviewed or otherwise participated in the MCCR proceedings, which concerned Bolden's Charge against CAEI, that does not mean that BGE was put on notice that

Bolden was asserting *any claims against BGE*.  "Notice" means putting a defendant on notice that it was "potentially subject" to "liability for the alleged violations." *Causey v. Balog*, 162 F.3d 795, 800-01 (4th Cir. 1998). In fact, there is absolutely no evidence that BGE was ever put on notice of any claims against it during the administrative phase.

In his Brief, Bolden, citing the MCCR's Written Finding, claims that Ms. Watts was employed by both CAEI and BGE and was also interviewed by the MCCR.  Bolden's Brief, ECF No. 78, pp. 21-22, 33.  However, the MCCR's Written Finding does not state that Ms. Watts was ever interviewed. JA167-180. Bolden admits that nobody from BGE or Exelon BSC participated in the MCCR's fact-finding conference.  SA36-37.  Moreover, it is undisputed that Ms. Watts was employed by CAEI during Bolden's employment.  JA127.  The EEOC argues in its amicus brief that Ms. Watts was "hand chosen by the BGE management team." EEOC Opening Brief, ECF No. 26, p. 11.  However, the EEOC cites to the MCCR's Written Finding, JA170, which provides no basis for this conclusion and is not supported anywhere in the record.  Finally, Bolden did not argue before the District Court that Ms. Watts was interviewed by the MCCR and is therefore barred from doing so now.

**B.**    **The District Court Correctly Ruled That The Substantial Identity Exception Does Not Apply**

As Bolden acknowledged in his summary judgment brief before the District Court, in order for his Title VII claims against BGE to survive and assuming the Fourth Circuit formally adopts the substantial identity exception, the only way Bolden may proceed with his lawsuit is by satisfying the substantial identity exception to the requirement that a plaintiff name a defendant in the underlying charge of discrimination before filing suit. JA199-200. Although the substantial identity test has not formally been adopted by this Court, the lower courts have set forth the following four parts to this test:

> 1) whether the role of the unnamed party could through reasonable effort by the complainant be ascertained at the time of the filing of the EEOC complaint;
>
> 2) whether, under the circumstances, the interests of a named [party] are so similar as the unnamed party's that for the purpose of obtaining voluntary conciliation and compliance it would be unnecessary to include the unnamed party in the EEOC proceedings;
>
> 3) whether its absence from the EEOC proceedings resulted in actual prejudice to the interests of the unnamed party;
>
> 4) whether the unnamed party had in some way represented to the complainant that its relationship with the complainant is to be through the named party.

*Elzey v. Wal-Mart Assocs., Inc.*, No. RDB-11-2151, 2012 U.S. Dist. LEXIS 122158, at *9 (D. Md. Aug. 28, 2012). The second and third factors are the most important. *Id.*; *see also Phillips v. Goodwill Indus.*, No. GLR-14-3256, 2015 WL 3844089, at

*2 (D. Md. June 19, 2015) ("The substantial identity exception allows an unnamed respondent to be sued in a district court where the 'unnamed defendants are substantially or 'functionally' identical to named ones.'").  A plaintiff bears the burden of proof to show that the exception applies.  *See Shaughnessy v. Duke Univ.*, No. 1:18-CV-461, 2018 WL 6047277, at * 3 (M.D.N.C. Nov. 19, 2018) (citing *Piney Run Pres. Ass'n v. Cty. Comm'rs of Carroll Cty.*, 523 F.3d 453, 459 (4th Cir. 2008)); *see also Marshall v. Anne Arundel Cty.*, No. SAG-18-0074, 2020 U.S. Dist. LEXIS 71083, at *26 (D. Md. Apr. 22, 2020).

Even if this Court adopts the substantial identity exception, there is no genuine dispute that the exception is not satisfied here, and the District Court correctly granted summary judgment in favor of BGE.

### 1.     Bolden Has No Evidence To Refute That He Knew BGE's Role When He Filed His MCCR Charge

The first factor concerns whether BGE's role could, through reasonable effort by Bolden, have been ascertained at the time he filed the Charge with the MCCR. *Elzey*, 2012 U.S. Dist. LEXIS 122158, at *9.  The facts demonstrate that Bolden was well aware of BGE's role and that BGE was a separate entity from CAEI. Accordingly, Bolden cannot create a genuine dispute on this issue.

First, Bolden's reliance on allegations in his Amended Complaint in his Brief are unavailing, and his allegations are wholly irrelevant.  His allegations do not constitute evidence, and a plaintiff cannot create a genuine issue of material fact

through unsubstantiated assertions and conclusory allegations. *Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649 (4th Cir. 2002).

Second, although Bolden claims that he was confused at his deposition about whether BGE and CAEI were separate entities, a fair reading of his deposition transcript shows that he clearly knew that BGE and CAEI were separate entities. SA25 ("Q: . . . So when you signed this agreement, you were aware that Exelon Business Services was a separate entity from CAEI, correct?  A: Correct."), SA68 (Q: And just to be clear, this is something we talked about a little while ago, but in – at least as of 2016, you knew that BGE and CAEI were separate companies?  A: Correct.").

Moreover, even if Bolden had some confusion about the Temporary Worker Agreement, he testified that he knew he was employed by CAEI and that he was assigned to work as a temporary contractor at the BGE call center.  SA3, SA8.  Thus, he knew the respective roles of BGE and CAEI.  Whether, as he claims in his Brief, he interviewed with both CAEI and BGE, that does not demonstrate that he did not know BGE's role.  To the contrary, it demonstrates that he in fact was aware that they were separate entities.  Bolden's understanding that BGE and CAEI were separate entities is further confirmed by the fact that, just prior to his termination from CAEI, Bolden applied for a job with BGE through the BGE website.  SA66-68.

Third, Bolden's argument that he could not have ascertained the role of BGE, because both CAEI and BGE exercised control over his work conditions and had power to hire, fire, discipline, assign, and promote Bolden, fails. Bolden cites his Amended Complaint (JA73), which is not evidence. He also cites JA311-314, which establish only that if Bolden had to call out from work, or had questions, he would have contacted his team leads *at CAEI*. Bolden also cites his deposition testimony at JA318-361, most of which is irrelevant to, and none of which supports, Bolden's argument. In fact, Bolden testified that he was disciplined by Angelique Watts (a *CAEI team lead*), and that Ms. Watts, Debra Chew, and Tabitha Horn (other *CAEI team leads*), and Raymond Hubbard (*CAEI Vice President of Operations*) gave evaluations to Bolden. JA318, JA322. Bolden admitted that he was evaluated by CAEI at least monthly and that BGE Manager Brian Andrews only appeared at two such evaluation meetings for the purpose of providing generic positive comments. JA318-321. CAEI's and BGE's roles with respect to Bolden, therefore, were not intertwined, and Bolden was able to distinguish between the two.

Fourth, the fact that Bolden referenced both CAEI and BGE in his intake form with the MCCR, JA185, further demonstrates that Bolden knew that CAEI and BGE were distinct entities with separate roles at the time that he filed his Charge. Bolden stated in the intake form, "I had only acted professionally in my time at CAEI & BGE." JA185. In fact, he claims in his Brief that by mentioning both CAEI and

BGE in the intake form, he intended to include BGE in his administrative charge. Bolden's Brief, ECF No. 78, pp. 37-38. The fact that he intended to name BGE in the charge completely undermines his argument that he did not know that it was a separate entity from CAEI or that he did not know BGE's role when he filed his Charge.

Moreover, the EEOC argues that the District Court misstated the considerations in the analysis of the first factor. Specifically, the EEOC states that the proper inquiry is whether the plaintiff could have reasonably ascertained the unnamed party's role "in the alleged discrimination." This is a distinction without a difference. As discussed in detail above, the District Court appropriately considered whether Bolden could have ascertained BGE's role in Bolden's employment relationship with CAEI such that he could have named BGE in a charge alleging discriminatory conduct. Moreover, as discussed above, Bolden claims that he intended to name BGE in his Charge, which shows that he had clearly ascertained what he deemed to be BGE's alleged role in the alleged discrimination.

Instead, the EEOC improperly seeks to expand factor one, relying upon case law that permits the EEOC to expand the scope of an investigation beyond the charge in an attempt to argue that the EEOC and plaintiffs should be able to sue companies discovered in an investigation but who are not named in a charge. This expansion is improper. It is one thing to expand an investigation into other types of

discrimination that is unearthed against the same employer—who is well aware of the possibility of being found responsible for discriminatory conduct. It is quite another to disregard a statutory mandate and fold in additional "employers" who were not named in a charge of discrimination.

The EEOC cites *Terrell*, but this case is unavailing. *See Terrell v. United States Pipe & Foundry Co*., 644 F.2d 1112, 1124 (5th Cir. 1981). In *Terrell*, the Fifth Circuit declined to confer jurisdiction over an international union that was not named in charges where that entity was not part of the EEOC's investigatory or conciliation efforts, and failed "even to receive informal notice" of the charges. *Id*. In setting forth the standard, the *Terrell* court relied upon *Tillman v. Boaz*, 548 F.2d 592 (5th Cir. 1977), which found a suit against the City of Boaz was appropriate even though the City of Boaz was named as the **employer** but not the **respondent** in the Charge and was subject to an EEOC investigation. *Id*. This is wholly different than bringing suit against a company that is entirely unaware that it may be subject to liability for discrimination and that was not named anywhere in the Charge.

### 2. Bolden Did Not Set Forth Any Facts To Establish That CAEI's And BGE's Interests Are "So Similar" That It Was Unnecessary To Name BGE In The Charge

For this second factor, courts in the Fourth Circuit consider interrelatedness of operations, management, ownership, and corporate officers when determining whether the unnamed party's interests were so similar as the named party that it was

unnecessary for the unnamed party to be included in the administrative proceedings. *See E.E.O.C. v. 1618 Concepts, Inc.*, 432 F. Supp. 3d 595, 605 (M.D.N.C. 2020) (finding second prong satisfied because the three defendants shared a main office location where employee files were housed, and shared corporate officers, management, and corporate ownership). By contrast, courts do not find that legally distinct entities share interests at the administrative level especially where they do not share these factors. *See, e.g., Hartz v. Adm'rs of Tulane Educ. Fund*, 275 Fed. App'x 281, 286-87 (5th Cir. 2008) (per curiam) (rejecting Plaintiff's argument that Tulane Educational Fund ("Tulane") and University Healthcare System LC ("UHS") shared an identity of interest where Tulane was a non-profit educational institution and UHS was a for-profit limited liability company and the two entities were domiciled at different addresses); *Marshall v. Anne Arundel Cnty., Md.*, No. SAG-18-0074, 2020 U.S. Dist. LEXIS 71083, at *19-20 (D. Md. Apr. 22, 2020) (concluding the second factor was in favor of the unnamed party because the County and the State's Attorney's Office were legally distinct and not branches of one another). Indeed, the *Marshall* court noted that because it was a legally separate entity, the County "had an independent interest in defending itself from Plaintiff's charges of discrimination." *Id.* at *21.

BGE and CAEI do not share any of the indicia of having similar interests. BGE is a gas and electric utility, whereas CAEI was a company that provided

information and technology consulting and professional services to companies, including BGE. JA125, JA131. BGE contracted with CAEI to manage its Collections Strategy Pilot, which focused on collecting outstanding funds due on gas and electric bills from BGE's customers. JA125. CAEI's headquarters were in Columbia, Maryland, BGE did not have an office or presence at that location, and the location was not jointly operated by BGE. JA126, JA219. Also, CAEI, not BGE, maintained employment records with respect to Bolden and any other CAEI employees. JA127. Accordingly, these considerations strongly support a finding in BGE's favor with respect to this factor.

In his opposition to BGE's motion for summary judgment, Bolden *did not address any of these considerations*. His sole argument was to refer to the District Court's ruling on Exelon's motion to dismiss (which was limited to the pre-discovery stage), in which, as previously discussed, the District Court stated that the MCCR's Written Findings included a reference to an interview with Exelon BSC manager Kadijah Webster. JA201. Bolden, however, did not explain how this demonstrates that BGE's and CAEI's interests are "so similar" that it was unnecessary to name BGE in the Charge. Because Bolden did not address any of the considerations with respect to this second factor before the District Court, he has waived any arguments with respect to such considerations. *See Singleton v. Wulff*, 428 U.S. 106, 120 (1976); *Muth v. United States*, 1 F.3d 246, 250 (4th Cir. 1993)

(explaining that issues not raised in district court will generally not be considered on appeal); *United States v. One 1971 Mercedes Benz 2-Door Coupe*, 542 F.2d 912, 915 (4th Cir. 1976) (explaining that the failure to raise and preserve issue in district court waives consideration of that issue on appeal absent exceptional circumstances). Therefore, this Court should disregard Bolden's new arguments on appeal regarding this second factor.

Even if Bolden did not waive the arguments he makes on appeal by not raising them below, his arguments still fail. First, Bolden argues on appeal that the fact that he included both CAEI and BGE on his MCCR intake form indicates their alleged joint involvement. Bolden's intake form simply contains allegations by Bolden; it is not evidence that CAEI's and BGE's interests are "so similar" that it was unnecessary to name BGE in the Charge. Moreover, the fact that Bolden referenced both CAEI and BGE on the intake form (JA185), and claims that he intended to include BGE in his Charge (Bolden's Brief, ECF No. 78, pp. 37-38), undermines his argument that it was not necessary to name BGE in the Charge.

Second, the fact that representatives of CAEI attended the MCCR fact-finding conference is immaterial. It simply shows that **<u>CAEI</u>** participated in the administrative process with respect to the Charge filed against it. This is entirely expected and not in dispute, nor is it legally significant.

Third, Bolden speculates that because CAEI attended the MCCR fact-finding conference, CAEI would have informed BGE of the Charge. It is unclear how this is even relevant to this second factor in the substantial identity test. Regardless, Bolden offers no evidence to show that BGE was aware that Bolden made claims against BGE at the administrative level. "Notice," with respect to a Title VII charge, means putting a defendant on notice that it was "potentially subject" to "liability for the alleged violations." *Causey v. Balog*, 162 F.3d 795, 800-01 (4th Cir. 1998). There is absolutely no evidence that, at the administrative level, BGE was on notice that it was potentially subject to liability for any claims made by Bolden. Furthermore, BGE notes that Bolden's argument assumes, incorrectly, that one company has an obligation to notify the other of the Charge. Bolden does not cite any authority in support of such an obligation.

Fourth, although Bolden did not make the argument at the District Court level, he now claims that the following facts show a similarity of interest between BGE and CAEI: (1) Mr. Hubbard managed CAEI's customer account with BGE and was responsible for managing BGE's Collection Strategy Pilot, (2) BGE and CAEI shared employees, management, supervision, operations, and office and working equipment, and Bolden had a BGE email account. Bolden's argument fails both because it is waived and also on the merits.

38

The fact that Mr. Hubbard managed CAEI's customer account with BGE does not establish a "similarity of interest." Under this logic, an employee would always be able to satisfy Title VII's notice requirement as to a second company with whom their employer had a business relationship by filing a Charge against their employer. This would eviscerate Title VII's notice requirement.  It is not uncommon for a corporation to have an employee who is assigned to manage a customer account or other similar relationship with a third party.  Regarding his allegation that BGE and CAEI shared workers, management, supervision, operations, offices, and equipment, Bolden does not cite to any evidence to support these allegations. Rather, he simply generally references the MCCR's Written Findings and his Complaint, neither of which constitutes evidence of these alleged facts.

To the contrary, Mr. Hubbard stated in his affidavit that (1) CAEI's "location was never jointly operated by CAEI and either BGE and/or Exelon Business Services," (2) "BGE was not responsible for managing or supervising CAEI employees, and BGE did not exercise control over any CAEI employees' work conditions," and (3) "CAEI was solely responsible for hiring and firing its employees and providing day-to-day supervision of its employees at the Collections Strategy Pilot, including disciplining its employees and promoting its employees to senior or lead positions." JA126.  Indeed, Bolden himself testified that CAEI employed all of the Customer Service Representatives where he worked. SA8-10.

Moreover, as previously mentioned, CAEI's bankruptcy petition, of which this Court can take judicial notice, did not reference BGE or Exelon BSC. *See* Bankruptcy Petition, *In re CAEI, Inc.*, No. 1:18-bk-14656 (D. Md. Apr. 9, 2018). Bolden offers no evidence to refute Mr. Hubbard's statements or to demonstrate that CAEI and BGE's interests were "so similar" that it was unnecessary to name BGE in his Charge. CAEI was a distinct and separate entity from BGE. JA126 ("CAEI is a separate and distinct entity from BGE, and it does not share any corporate or business identity with BGE."). Accordingly, the second factor is not satisfied. *See Mayes v. Moore*, 419 F. Supp. 2d 775, 783 (M.D.N.C. 2006) (unnamed parties' interests are not similar when the defendants are separate business entities); *Lindblad v. J&L Services, Inc.*, No. 4:18-cv-1336-RBH-TER, 2019 U.S. Dist. LEXIS 25209, at *25 (D.S.C. Jan. 30, 2019) (noting that the second factor is not satisfied where the parties are "separate corporate entities"), *adopted by* 2019 U.S. Dist. LEXIS 24755 (D.S.C. Feb. 15, 2019).

The EEOC also takes issue with the District Court's articulation of the second factor of the substantial identity test. However, the EEOC again seeks to improperly expand the narrow exception to Title VII's notice requirement. The District Court correctly evaluated the factors that other district courts in the Fourth Circuit consider in evaluating this prong of the test. The EEOC relies upon *Daniel v. T&M Prot. Res., Inc*., a case out of New York, to argue that the Court should not limit this factor

40

to where the two entities are closely related.  992 F. Supp. 2d 302, 312 (S.D.N.Y.

2014).   In *Daniel*, the district court concluded that because Mr. Minskoff, an

individual who was the property manager and co-owner for the property, retained

T&M to manage staffing, Minskoff had shared interests with T&M.  However, this

approach is far too broad, and is inconsistent with the district courts in the Fourth

Circuit, who consistently look to whether the unnamed party is closely interrelated

with the named party to determine whether the unnamed party may be sued under

the substantial identity exception.

Moreover, the EEOC cites cases for the proposition that a contractual

arrangement between two entities may be sufficient to satisfy this second factor.

However, as the EEOC admits, Bolden has not made that argument.  Any such

argument is, therefore, waived. Therefore, even if this Court were to agree with the

EEOC's interpretation of this second factor, it would not affect the outcome of this

case.

### 3.      Bolden Failed To Refute That BGE Was Prejudiced By Not Participating In The Underlying Administrative Proceeding

The third factor in the substantial identity test considers whether BGE was

prejudiced  by  its  absence  from  the  administrative  proceedings.    As  BGE

demonstrated at the summary judgment stage, it was prejudiced by the fact that it

was unable to participate in the investigation and was not included in the fact-finding

conference or pre-determination settlement discussions.

41

On appeal, Bolden argues that: (1) the MCCR report shows that BGE and CAEI's officers were named in the report, were interviewed by the MCCR, and participated in the conciliation discussions, (2) Bolden was not aware that BGE and CAEI were separate entities, and (3) the decision in *Gamble v. Charles County*, 20-cv-3126-PWG, 2021 WL 3491823 (D. Md. Aug. 9, 2021) compels a finding that BGE was not prejudiced. For the following reasons, these arguments fail.

First, there is no evidence that any BGE officer or employee participated in the MCCR proceedings or engaged in settlement discussions. Bolden specifically references BGE employee, Ms. Webster (now Duncan) and CAEI employee Ms. Watts, whom he claims was employed by both CAEI and BGE based on the MCCR Finding. As discussed above, however, Ms. Webster was not interviewed by the MCCR. JA165. Regarding Ms. Watts, she was employed by CAEI. JA127 (stating that Ms. Watts was employed by CAEI and was CAEI's on-site manager responsible for the day-to-day oversight of CAEI's employees working on the BGE Collections Strategy Pilot). Indeed, Bolden himself testified that Ms. Watts was a Team Lead for CAEI and his supervisor. SA12-13. Although she oversaw CAEI's employees who were performing work for CAEI's customer, BGE, that does not mean that she was employed by BGE. Nor does the general statement in the MCCR's Written Findings that Ms. Watts "worked for CAEI and BGE" constitute evidence that Ms. Watts was employed by BGE. Rather, as stated above, it is not

disputed that Ms. Watts was a CAEI employee who managed CAEI's employees performing work on the BGE account.  There is no evidence that, in that capacity, she would have represented BGE's interests to the extent that she participated in the MCCR's administrative proceedings.  Moreover, Bolden admitted at his deposition that no one from BGE or Exelon attended the MCCR's fact-finding conference.  SA36-37.  And, during the fact-finding conference with the MCCR, Bolden and CAEI entered into a Settlement Agreement to resolve the matter. Both Bolden and CAEI signed the Settlement Agreement.  SA63, JA159-162. BGE did not participate in these discussions. SA36-37, SA63.  It is therefore undisputed that BGE did not participate in the administrative Charge process or settlement discussions.

Second, as previously discussed in Section II.B.1, *supra*, Bolden was in fact aware that BGE and CAEI were separate entities.

Third, the *Gamble* decision is inapposite, as the facts in *Gamble* are readily distinguishable from the facts herein. In *Gamble*, the plaintiff named the Charles County Sheriff's Office in his Charge of Discrimination rather than Charles County. 2021 WL 3491823, at *27.  As an initial matter and importantly, the court concluded that while they are legally separate entities, the Sheriff's Office and the County are closely intertwined, and therefore the County failed to demonstrate how the Sheriff's Office could not adequately represent its interests before the EEOC. *Id*.  It follows,

43

therefore, that the County did not demonstrate that its exclusion from the administrative process resulted in prejudice. *Id*.

Further, in *Gamble*, the underlying charge was pending with the EEOC, not the MCCR, and, therefore, the charge in *Gamble* was subject to different administrative procedures. There, the court held that there was no prejudice because "the EEOC filing did not result in an adverse finding" against either party, and therefore, the naming of an additional party would have not altered the EEOC proceedings because it found that the plaintiff had not made out a statutory violation.

Here, on the other hand, the MCCR held a fact-finding conference where Bolden and CAEI both had an opportunity to engage in settlement discussions, produce witnesses for interviews, and advocate their respective positions directly to an MCCR investigator. The MCCR fact-finding process is specifically designed for a respondent to advocate for its position directly before the MCCR. *See* https://mccr.maryland.gov/Pages/Fact-Finding-Conference.aspx. Bolden admits that BGE did not participate in either the Fact-Finding Conference or the settlement discussions. SA36-37. Therefore, Bolden's reliance on *Gamble* is misplaced because it is unknown whether BGE's participation in the settlement discussions would have resulted in a complete resolution of the matter. In fact, CAEI and Bolden reached a binding settlement agreement that was almost immediately rescinded by Bolden. JA334-338. BGE was deprived of the ability to resolve the matter before

44

this lawsuit was filed, and it was deprived of its ability to present its position in the MCCR proceedings, which may have deterred Bolden from filing suit against BGE. *See Balas v. Huntington Ingalls Indus., Inc.*, 711 F.3d 401, 407 (4th Cir. 2013) (explaining that notice to the employer of the alleged discrimination "gives the employer the chance to voluntarily conduct its own investigation and attempt to resolve any discriminatory actions internally"); *Marshall v. Anne Arundel Cnty., Md.*, No. SAG-18-0074, 2020 U.S. Dist. LEXIS 71083, at *25 (D. Md. Apr. 22, 2020) (employer "was deprived of notice and the opportunity to consider, through the conciliation process, whether the case could be resolved in a voluntary fashion"); *Lindblad v. J&L Services, Inc.*, No. 4:18-cv-1336-RBH-TER, 2019 U.S. Dist. LEXIS 25209, at *26 (D.S.C. Jan. 30, 2019) (concluding that the unnamed party "suffer[s] unfair prejudice by remaining a party to Plaintiffs' Title VII claims because it was not given the opportunity to respond to the administrative charges or participate in the EEOC's resolution and conciliation process").

The EEOC incorrectly argues that the "mere absence" of the unnamed party from the administrative proceedings is not sufficient, and the unnamed party must demonstrate that it experienced actual prejudice. Again, the EEOC impermissibly seeks to expand a narrow exception. The absence of an unnamed party's participation in an administrative process is inherently prejudicial. *See, e.g., Hafez v. Avis Rent A Car Sys.*, 2000 U.S. App. LEXIS 31032, at *8 (2d Cir. 2000) (finding

that "the supervisors would have been prejudiced by being subjected to liability for incidents that occurred several years earlier, when they were unable to respond to the EEOC investigations and had not been included in the litigation"…); *see also Thomas v. Crush Enters.*, No. CIV-16-773-W, 2017 U.S. Dist. LEXIS 232606, at *18 (W.D. Okla. Aug. 30, 2017) (defendant was prejudiced by its absence from EEOC proceedings); *Bright v. Le Moyne College*, 306 F. Supp. 2d 244, 257 (N.D.N.Y. 2004) ("Union's absence from the EEOC proceedings resulted in actual prejudice to it since the EEOC investigation might have found that the Union played no part in any of the discriminatory act alleged by plaintiff.").

Remarkably, although the burden is on the employee to exhaust their administrative remedies prior to filing suit, the EEOC asks this Court to develop a test that would require the unnamed party to demonstrate why its absence resulted in specific prejudice. It is virtually impossible for an unnamed party to demonstrate how an investigation may have changed shape, or whether an employee might have opted not to sue upon learning of additional information from the unnamed party, or whether the unnamed party may have achieved settlement or conciliation. However, the very fact an unnamed party did not have the opportunity to be heard during the investigation necessarily creates prejudice.

Moreover, cases cited by the EEOC are inapposite. For example, the EEOC cites two cases in which, unlike here, there had not been any agency investigation or

settlement discussions. *See Cook v. Arrowsmith Shelburne, Inc.*, 69 F.3d 1235, 1242 (2d Cir. 1995) (unnamed party could not have been prejudiced because there were no EEOC proceedings); *Rivera v. P.R. Home Attendants Servs., Inc.*, 922 F. Supp. 943, 948 (S.D.N.Y. 1996) (unnamed party did not suffer prejudice because the EEOC did not conduct an investigation or engage in conciliation efforts). The EEOC also relies on cases in which, also unlike the instant case, the defendants did not make any argument that they had suffered any prejudice. *See Williams v. City of Columbus*, 892 F. Supp. 2d 918, 926 (S.D. Ohio 2012); *Sank v. City Univ. of N.Y.*, No. 94-cv-0253, 1995 U.S. Dist. LEXIS 7021, at *18 (S.D.N.Y. May 24, 1995).

## 4. BGE Did Not Represent To Bolden That BGE's Relationship With Him Should Be Through CAEI

As BGE argued below, and as the District Court correctly held, Bolden failed to provide evidence that BGE represented that its relationship with Bolden would be through CAEI. On appeal, Bolden argues that (1) he initially believed that BGE's and CAEI's interests were identical when he filed his administrative charge, (2) he was confused about whether BGE and CAEI were separate entities, (3) Ms. Watts worked for CAEI and BGE and assumed responsibility for many of BGE's pilot programs, and (4) CAEI was somehow obligated to inform BGE of the administrative Charge. BGE has already addressed, and refuted, these very arguments previously in this brief. Moreover, Bolden did not raise these arguments in the District Court and therefore they are waived.

47

Regardless, BGE makes the following additional points. First, the record is completely devoid of any representations that BGE made to Bolden to satisfy this factor or of any representations whatsoever that were made to Bolden that would form the basis for any legitimate belief by Bolden that by naming CAEI in his Charge, he was also naming BGE. *See, e.g.*, *Smith v. Delaware River Stevedores*, No. 07-1864, 2008 WL 4890135, at *4 (E.D. Pa. Nov. 10, 2008) (interpreting the fourth factor of the substantial identity test "as asking whether, based on representations made to her, Ms. Smith could have reasonably believed that by naming the Union in her formal charge, she was also naming PMTA, Delaware River, and Greenwich"). In fact, as Bolden himself pointed out in his Brief, he mentioned both CAEI and BGE in his MCCR intake form and states that he intended to name BGE as a respondent in the Charge. Bolden's Brief, ECF No. 78, pp. 37-38. This undermines any possible argument that he had a legitimate belief that by naming CAEI in his Charge, he was also naming BGE.

Second, Bolden's Brief cites JA184 in support of his assertion that he initially believed BGE's interests were identical to CAEI's when filing the Charge. JA184, however, is a blank page. To the extent he intends to refer to JA185, which is the MCCR intake form, as discussed above, his assertion is undermined by the fact that he mentioned both CAEI and BGE in the intake form and claims that he intended to name both BGE and CAEI as respondents.

Third, as discussed herein, Bolden's deposition testimony at JA218-221 reflects that he did understand that BGE and CAEI were separate entities given that he references being interviewed by both CAEI and BGE individuals, he applied for a job in person at CAEI's facilities, and that BGE and CAEI were located at different addresses. Moreover, Bolden testified that, as early as 2016, he understood that BGE and CAEI were separate entities. SA25, SA68.

Fourth, the fact that Ms. Watts, a CAEI employee, managed CAEI's employees who performed work on BGE's program, JA127, does not mean that BGE, or anyone else for that matter, represented to Bolden that his relationship with BGE with respect to his claims against BGE should be through CAEI. Indeed, Bolden testified that he discussed his concerns directly with BGE Manager Mr. Andrews, which directly undermines his argument that he believed his relationship with BGE ought to be through CAEI. JA263-264, SA26. In addition, Bolden also testified he applied for a position with BGE just prior to his termination, which further supports the notion that he did not believe his relationship with BGE was through CAEI. SA66-68.

Fifth, there is absolutely no evidence that CAEI was under any obligation to notify its customer, BGE, of the Charge. Bolden also cites to no legal authority stating that as BGE's vendor, CAEI had such an obligation. Indeed, to impose such an obligation on vendors/contractors would eviscerate Title VII's notice requirement.

In conclusion, because all four factors of the substantial identity test favor BGE, the District Court properly concluded that Bolden did not exhaust his administrative remedies with respect to BGE.

### III.  This Court Does Not Have Jurisdiction To Consider The District Court's Denial Of Bolden's Motion For Reconsideration

In his Brief, Bolden challenges the District Court's denial of his motion for reconsideration of the District Court's summary judgment ruling.  Because Bolden did not file a notice of appeal with respect to the District Court's order denying his motion for reconsideration, this Court does not have jurisdiction to consider the District Court's denial.

On September 26, 2023, Bolden, under Rule 59(e) of the Federal Rules of Civil Procedure, moved for reconsideration of the District Court's summary judgment ruling. JA391-396.  While the motion was pending, on October 11, 2023, Bolden filed a Notice of Appeal, stating only that he was appealing the District Court's September 12, 2023 Order granting summary judgment to BGE.  JA436 (stating Bolden "hereby appeals to the United States Court of Appeals for the Fourth Circuit ORDER the [sic] entered in this case on September 12, 2023").

On November 12, 2023, the District Court entered an order properly denying Bolden's motion for reconsideration.  JA437-438.  Bolden did not file a notice of appeal, or an amended notice of appeal, with respect to that order.

50

In accordance with Rule 4(a)(4)(B)(i) of the Federal Rules of Appellate Procedure, this Court stated that Bolden's October 11, 2023 Notice of Appeal was filed in the District Court on November 12, 2023, the date on which the District Court entered the order denying Bolden's motion for reconsideration. Fourth Circuit, Appeal 23-2195, ECF No. 1; *see also* Fed. R. App. Proc. 4(a)(4)(B)(i).

Bolden's Brief, however, ignores the following language in Rule 4 that governs the filing of a notice of appeal of an order denying a motion for reconsideration:

> A party intending to challenge an order disposing of any motion listed in Rule 4(a)(4)(A) . . . , must file a notice of appeal, or an amended notice of appeal – in compliance with Rule 3(c) – within the time prescribed by this Rule measured from the entry of the order disposing of the last such remaining motion.

Fed. R. App. Proc. 4(a)(4)(B)(ii). Rule 4(a)(4)(A) includes a Rule 59 motion such as that filed by Bolden. Fed. R. App. Proc. 4(a)(4)(A)(iv) (referencing a motion "to alter or amend the judgment under Rule 59"); *see also* JA391-392 (stating that Bolden's motion for reconsideration was filed under Rule 59(e)).

Thus, if Bolden wanted to appeal the District Court's order denying his motion for reconsideration, he was required under Rule 4(a)(4)(B)(ii) to file a notice of appeal, or an amended notice of appeal, within 30 days of the District Court's November 12, 2023 order. Bolden's failure to do so deprives this Court of jurisdiction to consider that order. *See Wall Guy, Inc. v. FDIC*, 95 F.4th 862,

866, 868-71, 876 (4th Cir. 2024) (citing Rule 4(a)(4)(B)(ii) and stating that the Plaintiffs' notice of appeal could not provide the basis for an appeal from a later-issued order denying a Rule 59 motion, stating that a notice of appeal "cannot create appellate jurisdiction over" a later Rule 59 order, and dismissing the appeal as to order denying Rule 59(e) motions for lack of jurisdiction); *Bracey v. Lancaster Foods LLC*, 838 Fed. Appx. 745, 747-49 (4th Cir. 2020) (citing Rule 4(a)(4)(B)(ii) for the proposition that "if a party intends . . . to challenge the district court's ruling on the Rule 59 or Rule 60 motion, he must file a new notice of appeal or amend the prior notice of appeal" and concluding that, because appellant did not file a new or amended notice of appeal, this Court lacked jurisdiction to consider the denial of the motion for reconsideration).

For these reasons, this Court lacks jurisdiction to consider Bolden's appeal of the District Court's order denying his motion for reconsideration.

**IV.    Even If This Court Has Jurisdiction To Consider Bolden's Appeal Of The District Court's November 12, 2023 Order Denying Bolden's Motion For Reconsideration, The District Court's Order Should Be Affirmed Because The District Court Did Not Abuse Its Discretion In Denying Bolden's Motion**

Even if this Court has jurisdiction to consider the denial of the Rule 59(e) motion, the District Court's ruling should be affirmed. The District Court's denial of Bolden's Rule 59(e) motion for reconsideration is reviewed under the abuse of discretion standard. *Robinson v. Wix Filtration Corp., LLC*, 599 F.3d

403, 407 (4th Cir. 2010). The District Court did not abuse its discretion in denying Bolden's motion for reconsideration, and Bolden's arguments fail.

First, Bolden claims that the District Court erred in refusing to consider previously unavailable evidence that he submitted in his motion for reconsideration. The supposedly previously unavailable evidence is located at JA397-399, which consists of an attendance sheet showing that CAEI officers attended the MCCR fact-finding conference, a letter from CAEI to the MCCR, and a spreadsheet. This evidence, which was included in the MCCR file that BGE received from the MCCR, was produced to Bolden on November 4, 2022, well before he filed his opposition to BGE's motion for summary judgment on March 21, 2023. JA414-427. The District Court, therefore, did not abuse its discretion in ruling that this was not previously unavailable evidence. JA437.

Second, the District Court also did not abuse its discretion in ruling that, even if that evidence had been previously unavailable, the evidence did not generate a dispute of material fact. JA437. On appeal, Bolden claims that this evidence shows that representatives of CAEI attended the MCCR fact-finding conference and that CAEI, as a vendor for BGE with an allegedly "close" relationship with BGE, had an obligation to inform BGE of the Charge. As BGE previously explained herein, there is no evidence or legal authority to demonstrate that CAEI had any such obligation. Bolden's argument is simply pure speculation.

53

Third, Bolden argues that the District Court should have granted his motion for reconsideration because its summary judgment decision was based upon a manifest error of law and fact.  Here, Bolden simply reiterates arguments that he made elsewhere in his Brief, including that (1) the District Court failed to consider the evidence of a "close relationship" between BGE and CAEI, including the fact that CAEI representatives attended the MCCR fact-finding conference and that the MCCR intake form mentioned both BGE and CAEI, and (2) the alleged previously unavailable evidence addressed above.  BGE has already refuted these arguments elsewhere in this brief, and it will not belabor those points here.  In moving to reconsider the summary judgment ruling, Bolden sought to relitigate the issues, and the District Court correctly denied his motion.

Simply put, even if this Court has jurisdiction to consider the District Court's denial of Bolden's motion for reconsideration, which it does not, the District Court did not abuse its discretion in denying the motion for reconsideration.

## **CONCLUSION**

For the foregoing reasons, the District Court's summary judgment decision should be affirmed, and Bolden's Appeal should be dismissed.  In the unlikely event that this Court does not affirm the District Court's summary judgment decision, this case should be remanded to the District Court with instructions that the District Court issue a ruling regarding BGE's alternative argument in its Motion for

54

Summary Judgment that Bolden did not experience discrimination, harassment, or retaliation under Title VII.

Respectfully submitted,

Dated: February 27, 2025

/s/Lindsey A. White
Lindsey White
Jill S. Distler
JACKSON LEWIS P.C.
2800 Quarry Lake Drive, Suite 200
Baltimore, Maryland 21209
(410) 415-2000 – Telephone
(410) 415-2001 – Facsimile
lindsey.white@jacksonlewis.com
jill.distler@jacksonlewis.com
*Attorneys for Appellee Baltimore Gas and Electric Company*

## **REQUEST FOR ORAL ARGUMENT**

Counsel respectfully requests oral argument in this matter.

## <u>CERTIFICATE OF COMPLIANCE</u>

1.  This document complies with the type-volume limit of FED. R. APP. P. 32(a)(7)(B) because, excluding the parts of the document exempted by FED. R. APP. P. 32(f):  this document contains <u>13,000 words</u>.

2.  This document complies with the typeface requirements of FED. R. APP. P. 32(a)(5) and the type-style requirements of FED. R. APP. P. 32(a)(6) because: this document has been prepared in a proportionally spaced typeface using Microsoft Word in <u>14-point Times New Roman</u>.

/s/ Lindsey White
Lindsey White

## <u>CERTIFICATE OF SERVICE</u>

I certify that on this 27th day of February 2025, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the Fourth Circuit using the Court's CM/ECF system. I certify that all counsel of record in this case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

/s/ Lindsey White
Lindsey White